[PHILADELPHIA, FEBRUARY 9, 1835.]

In the matter of the Inquisition of escheat of the estate of
SARAH DESILVER, deceased.

IN ERROR.

The feoffment and livery of a lunatic or madman are not void, but voidable; and as they work a divesture of his seisin, they proclude the possibility of an escheat by his death, because seisin must be found at his death, as well as failure of heirs, devisees or known kindred; and though escheats take effect in Pennsylvania, not on principles of tenure, but by force of our statutes, yet these statutes require the decedent to have been seized at his death.

But a deed of bargain and sale, though by the express words of the statute, it has the force and effect of a feoffment and livery for the purpose "of giving possession and seisin, and making good the title and assurance," is not equivalent in all respects, to a feoffment and livery, and if executed by a lunatic or madman, it is void.

Therefore, on the trial of a traverse of an inquisition of escheat, evidence is admissible on the part of the Commonwealth to shew the insanity of the decedent at the time he executed a deed of bargain and sale.

THIS case came before the Court on a writ of error to the Court of Common Pleas of Philadelphia county, in which it was a traverse of an inquisition of escheat, of the estate of *Sarah Desilver*, deceased, taken on the 12th of November, 1829, and filed with the proceedings of the inquest on the 13th of November, 1829. The traverse was filed by the Rev. *Thomas J. Kitts*, and the Trustees of the Second Baptist Church and congregation in Philadelphia.

The inquest found that *Sarah Desilver*, died, on or about the 22d of June, 1828, intestate, without heirs or any known kindred, and that she was at the time of her death seized and possessed of certain real estate, in the county of Philadelphia, particularly described in the inquisition, and that *Thomas J. Kitts*, of the said county, was the person in whose hands or possession the real estate then was.

Various pleadings took place in the court of Common Pleas, but by writing filed, dated the 6th of March 1833, it was agreed that the pleadings should be withdrawn; that every material fact found in the inquisition, should be understood to be traversed, and the case tried as if a formal issue had been joined according to the agreement.

On the trial, after the counsel of the traversers had given in evidence the death of *Sarah Desilver*, a paper writing, purporting to be the last will and testament of the said *Sarah Desilver*, dated the 8th of December, 1824, and proved the 26th of July, 1828, devising part of the property mentioned in the inquisition to "the Trustees of the Second Baptist Church and congregation in the City of Philadelphia, under the ministry of the Rev. Mr. *Kitts*, and their successors in office forever, for the use of said church, and the residue thereof, to

(In the matter of the estate of Sarah Desilver.)

*Thomas J. Kitts,* in fee simple," and an instrument, purporting to be a deed, dated the 24th of August, 1825, acknowledged the 30th of August, 1825, and recorded the 28th of October, 1825, from *Sarah Desilver* to *Thomas J. Kitts,* conveying the said estate to *Kitts* in fee simple, provided that the rents, issues and profits of the whole estate should, after the payment of ground rents, taxes and the necessary repairs, be by him, his heirs, administrators, and assigns, well and truly applied to the use of the said *Sarah Desilver* during her natural life, and provided also, that immediately upon her decease, he, his heirs or assigns, should make or cause to be made and executed unto the Trustees of the Second Baptist Church, &c., a lawful deed, for a certain part of the property, the same, that by the will was given to the church; the counsel for the Commonwealth, offered to prove that, " *Sarah Desilver,* was *non compos mentis* before, at and after, the alleged signing, sealing and delivery of the said last will and testament," and that she was "*non compos mentis* before, at and after the alleged signing and execution of the deed as aforesaid, and that the said *Sarah Desilver* continued to be *non compos mentis* as aforesaid, unto and until the time of her death, as aforesaid." The evidence thus offered being objected to by the counsel of the traversers, was rejected by the court. The counsel of the Commonwealth " further offered in evidence the fact, that the said *Thomas J. Kitts,* for a long time before and until the death of the said *Sarah Desilver,* acted as, and was her sole agent, and admitted her to be in the possession of the real estate in the said inquisition mentioned and set forth." This evidence was also objected to, on the part of the traversers, and rejected by the court, who sealed a bill of exceptions on both points.

The jury returned a verdict in favour of the traversers, whereupon a writ of error was sued out, on which the record was brought into this court, where errors were assigned in the rejection by the court below, of the evidence offered on the part of the Commonwealth, as above stated.

*Rush, H. J. Williams* and *Dallas,* for the Commonwealth.

*Grinnell* and *P. A. Browne,* for the traversers.

The opinion of the court was delivered by

GIBSON, C. J.—The authorities distinctly show that the feoffment and livery of a lunatic or madman, are not void but voidable, and that as they work a divesture of his seisin, they preclude the possibility of an escheat by his death, because seisin must be found by the inquest, as well as a failure of heirs, devisees, or known kindred. His feoffee holds discharged, because an avoidance of the act would not restore the seisin of the lunatic, at the time of his death, which is essential to an escheat of his estate to the immediate lord of the fee. It is true that our property is allodial, and that

(In the matter of the estate of Sarah Desilver.)

escheats with us, take effect, not upon principles of tenure, but by force of our statutes to avoid the uncertainty and confusion, inseparable from the recognition of a title founded in priority of occupancy; yet these statutes equally, and in terms, require the decedent to have been seized at his death. So far the argument made for the defendant in error, seems to be unassailable. The defect in it is, that it fails to prove the deed of bargain and sale, by which he holds, to be equivalent in *all* respects to a feoffment. It is not a feoffment in form or in fact, nor has it at all the qualities or consequences of one, as was determined in *M'Kee's Lessee* v. *Pfouts*, where it was not suffered to work a forfeiture like the feoffment of a tenant for life. But granting it, as it undoubtedly has by the express words of the statute, the force and effect of a feoffment and livery, for the purpose of "giving possession and seisin, and making good the title and assurances," yet in order to do so, *it must be a deed;* for the legislature certainly never intended to impart the prescribed effect to an act *in pais* which should at the same time be a nullity. At common law the feoffment of a madman, as shown by the argument, is *only* voidable, but his deed is absolutely void; so, that unless we can infer a legislative design, to alter the common law in the latter particular, we must hold that his conveyance by bargain and sale is void, and unattended with the consequences attempted to be attributed to it. This design could be inferred, but from the clause which gives a deed of bargain and sale, the force and effect of a feoffment in "*making good* the title and assurance." But, in that aspect, it must, in *M'Kee's Lessee* v. *Pfouts*, have created a tortious fee in the grantee, and produced a forfeiture of the grantor's life estate: a consequence which was denied to it. The obvious purpose of the provision was to dispense with actual investiture, without imparting to its substitute the feudal and almost inconceivable effect of displacing lawful estates and turning them to a mere right; or giving to it any quality or consequence beyond the one specified. The object was to give without the aid of feudal ceremonies, the legal seisin for lawful purposes. In treating the conveyance therefore, as an actual feoffment, which transferred the seisin without regard to the sanity of the grantor, the judge who tried the cause gave it an effect, never intended to be imparted to it. The capacity of the Commonwealth to contest its validity, was settled in *Crawford* v. *The Commonwealth*, 1 *Watts*, 484, where she was adjudged to be the *ultima hæres;* and succeeding as such to the rights and remedies of the heir and next of kin, she may, on the strictest principles of the common law, be let in to show the grantor's insanity.

Judgment reversed, and a *venire de novo* awarded.