[ PHILADELPHIA, FEBRUARY 29TH, 1840. ]


BENSELL and Others *against* CHANCELLOR.

| 5wh371 |
| 164   149 |

IN ERROR.


1. In ejectment by the devisees of A. against one claiming under a deed from A., executed by B., his brother, and attorney in fact, the allegation on the part of the plaintiffs being that A. was *non compos mentis* at the date of the deed, it was *held*, that evidence of declarations of B. that A. was *non compos* about the time of the execution of the power of attorney and deed, was not admissible on behalf of the plaintiffs.

2. In 1799 A. made a will, wherein he devised certain real estate to B. for life, and from and immediately after the decease of B. to the children of B. that should be living at the time of their father's death, as tenants in common in fee. In 1803 a deed of bargain and sale of the premises was executed by A. to C. In 1805 A. died; and in 1827 B. died; and in 1831 an ejectment was brought by the children of B. against persons holding the premises by mesne conveyances under C.; on the ground that A. was *non compos mentis* at the date of the deed: *Held*, that the plaintiffs were barred by the statute of limitations, though A. was *non compos* at the date of the deed, and though the plaintiffs were infants at the time of his death.

3. A grantor in a deed may avoid his conveyance by proof that he was *non compos mentis* at the time of its execution.


ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action of ejectment brought by Charles Edward Bensell, E. S. Bensell, and George A. Bensell against Wharton Chancellor, to recover a certain messuage and lot of land, situate in the county of Philadelphia.

On the trial, before PETTIT, Pres't, on the 28th of May, 1839, the plaintiff's counsel gave in evidence that a certain Engle Bensell being seised in his demesne as of fee, of the premises, made and published his last will and testament, on the 26th day of March, 1799, whereof he appointed his brother, Doctor George Bensell, sole executor, and thereby devised the premises to his said brother, George Bensell, for and during all the term of his, the said George Bensell's natural life; and from and immediately after the decease of the said George Bensell, then unto all and every the child and children of the said George Bensell, that should be living at the time

(Bensell *v.* Chancellor.)

of their father's death, and the lawful issue of such of them as should be then deceased, in fee, as tenants in common, so nevertheless, that such issue should take and receive such part or share only as his, her, or their deceased parent would have taken if then living. That the said Engle Bensell died in the month of June, 1805, and that on the 8th day of July following, his will was duly proved. That George Bensell died in the year 1827, and that the plaintiffs were his sole surviving children at the time of his death; and that such of his children as were then deceased had left no issue then surviving.

The counsel of the defendant, to maintain and prove the issue on his part, gave in evidence the original title papers of the premises in controversy, and among them a deed of the 1st of June, 1724, from one Ashmead and wife to Griffith Jones, in fee, and a lease and release, in fee, dated the 25th and 26th of April, 1738, from Jones and wife to George Bensell, under whom title was deduced to his grandson, the said Engle Bensell.

A letter of attorney, dated the 7th of September, 1803, from the said Engle Bensell to the said George Bensell, was called for by the defendant's counsel, and produced under the call by the plaintiff's counsel. It was acknowledged on the day of its date, before the then chief justice of the Supreme Court of Pennsylvania, and attested by two subscribing witnesses, proved to be since dead, one of whom was then a student of the law in the office of William Rawle, Esquire. This letter of attorney was recorded within a month after its date; and it was proved by Frederick Beates, a scrivener, examined as a witness for the defendant, that it was drawn by a deceased clerk of his, and for him, under the direction of the said William Rawle, Esq., a deceased lawyer of high standing. Mr. Beates, whose age was seventy-seven, testified, that at this day he could not remember any thing at all about this letter of attorney, except that he made it for Mr. Rawle; and could not put the parties in the way of getting at any living witness who could give any information of the facts which took place at the time of its execution. The letter of attorney contained a general authority from Engle Bensell to George Bensell, to manage all his estate, real and personal, and particularly to sell and convey all his real estate, and receive and invest the proceeds, &c.

The defendant then gave in evidence a deed of bargain and sale, dated the 12th of September, 1803, from Engle Bensell, by his attorney, George Bensell, to Edward Burrows, in fee, for the premises in question, for the consideration of three thousand dollars; and then deduced a title regularly, by various conveyances, from Burrows to himself. He also proved that Burrows, and those deriving title under him, had been in peaceable possession of the premises

from the 12th of September, 1803, to the day upon which the issue was tried.

The counsel for the plaintiffs then to rebut this evidence, produced two witnesses to prove that Engle Bensell was insane about the time of the date of the power of attorney and conveyances; and for the purpose of proving, as they stated, that George Bensell, at the date of the power of attorney, knew that Engle Bensell was insane, offered in evidence an exemplification of certain proceedings in the Orphans' Court, viz., a petition by George Bensell, dated the 26th of March, 1803, setting forth that Engle Bensell, his brother, had been appointed guardian of the person and estate of Ann Billings, a niece of the petitioner, and that the said Engle Bensell laboured under a mental disorder, in consequence of a paralytic affection, and which rendered him incapable of business, and praying the Court to revoke the appointment. Attached to the petition was a certificate, signed by three persons, setting forth that Engle Bensell was at the time in a state of apparent mental derangement, and an affidavit by George Bensell to the truth of the facts stated in the petition. The record also stated that the Court revoked the appointment of Engle Bensell, and appointed Dr. Bensell guardian in his place.

This document was objected to by the defendant's counsel, and rejected by the Court; whereupon the plaintiff's counsel excepted.

The plaintiff's counsel then offered in evidence a certificate dated the 2d of May, 1804, signed by Dr. Caspar Wistar, (since deceased) stating that he had seen Engle Bensell, and examined his case, and found that he was afflicted with insanity, and was a proper patient for the Pennsylvania Hospital; together with an obligation from George Bensell to provide for him there.

These papers were also objected to, rejected, and exception taken.

The plaintiff's counsel then offered in evidence a paper in the handwriting of George Bensell, dated Monday, June 24th, 1805, and endorsed " memorandums respecting proving E. Bensell's will;" and another paper, also in the handwriting of George Bensell, without date, and apparently a part of a letter respecting his brother's affairs, in which the fact of his labouring under mental derangement was stated.

These papers were also objected to, rejected, and exceptions taken.

The defendant's counsel then produced a witness, who testified that he was present when the purchase was made of the property of Burrows in 1803; that the price given was a large one; that the purchase was made of George Bensell; that Engle Bensell was

(Bensell *v.* Chancellor.)

not present in the transaction ; and that he saw Engle Bensell occasionally at the time, and did not notice that he was out of his mind.

The Court charged the jury, that there were three questions in the cause.

1. Whether Engle Bensell's mental incapacity was such as to render invalid the sale to Captain Burrows.
2. Whether there was any fraud in the transaction to which Captain Burrows was in any respect privy.
3. Of the effect of the possession of the defendant, and those under whom he deduced title, from the time of the purchase by Edward Burrows.

The two first points were left to the jury.

On the third point, the Court, after remarking that the possession of Edward Burrows and those holding under him, was admitted to have continued from the year 1803 to the bringing of this action, charged, that if there had been no fraud in the transaction to which Edward Burrows was privy when he bought and paid for the land, the adverse possession began to run from the time when he took possession of it. And in that event, his possession and that of those who deduced title under him, was a sufficient bar to the plaintiff's claim, even though the jury were satisfied of the insanity of Engle Bensell at the time of making the letter of attorney to George Bensell. But that if there was fraud on the part of Edward Burrows, then the statute of limitations would not avail as a defence, and the plaintiffs might recover. That the disability or impediment of insanity ceased with the death of Engle Bensell, in 1805. That although the plaintiffs were then in their minority, the disability of infancy could not be superadded to that of insanity, so as to give the plaintiffs the benefit of the cumulative, or additional disability of infancy. That the intervention of the life-estate of Dr. Bensell, under Engle Bensell's will, did not suspend the running of the statute of limitations, because the possession of Burrows had begun during Engle Bensell's lifetime, before the commencement of the life-estate. That as the possession thus begun had continued in the whole, for more than twenty-one years before suit brought, and as more than ten years of that time had elapsed since the cessation, by Engle Bensell's death, of the only disability which existed when the adverse possession began to run, the plaintiffs, (if there were no fraud on the part of Captain Burrows,) were precluded and barred from maintaining the present action.

A bill of exceptions having been taken, the cause was removed to this Court, and error assigned in the following points.

" 1. That the Court below rejected as inadmissible an exemplification of certain proceedings in the Orphans' Court, touching the appointment of Dr. G. Bensell as guardian to his niece, Ann Billings, offered in evidence by the plaintiffs to prove the insanity of Engle Bensell, and the said Dr. G. Bensell's knowledge of the same.

2. That the said Court rejected as inadmissible a certificate of the insanity of Engle Bensell, signed by C. Wistar, Junior, deceased, M. D., and the engagement of Dr. G. Bensell to pay for the maintenance of the said Engle Bensell, while in the Pennsylvania Hospital, offered in evidence by the plaintiffs, for the purpose of proving the insanity of the said Engle Bensell, and the said Dr. G. Bensell's knowledge thereof."

3. That the said Court rejected as inadmissible two papers, proved to be in the handwriting of Dr. George Bensell, offered for the same purpose as the documents mentioned in the first and second errors above assigned.

4. That the learned judge who tried the cause left it as a question for the jury, whether Engle Bensell's 'mental incapacity was such as to render invalid the sale to Captain Burrows.

5. That the said learned judge charged the jury, that if there were no fraud to which Edward Burrows was privy when he bought and paid for the land in controversy, the adverse possession began to run from the time when he took possession of it, and in that event his possession, and that of those claiming under him, was a bar to the plaintiff's claim.

6. That the said learned judge charged the jury, that though the plaintiffs were in their minority at the period of Engle Bensell's death, the disability of infancy could not be superadded to that of insanity, so as to prevent the statute of limitations from running against the plaintiffs until they respectively arrived at the age of twenty-one years.

7. That the judge aforesaid charged the jury that the intervention of the life-estate of Dr. G. Bensell did not suspend the running of the said statute, because the possession of Burrows had begun during Engle Bensell's lifetime, before the commencement of the said life estate.

8. That the aforesaid learned judge charged the jury that the plaintiffs were precluded and barred from maintaining their said action by the statute of limitations aforesaid."

Mr. *Meredith*, for the plaintiffs in error.—The material point in this case is, when did the adverse possession of Burrows, or of those claiming under him commence. We contend that it did not begin until the death of Engle Bensell. The twenty-one years commence

from the time that a right of entry accrues, or an action may be supported. *Hall* v. *Vandegriff*, (3 *Binn.* 374.) The possession of Burrows was not adverse to Bensell. Adverse possession must be grounded on disseisin. *Angel on Limitations,* 76, 77. Bensell, being a lunatic, could not disable himself, or enter against his own deed. *Bro. Abr.* tit. *Dum Fuit*, &c., pl. 3. *Litt.* 405, 406. 4 *Co. Rep.* 125. Bensell not having had a right of entry in his lifetime, the twenty-one years could not have begun until his death, when the right of entry accrued to his devisee for life. The case of *Cutler* v. *Motzer*, (13 *Serg. & Rawle*, 356,) is decisive on this point. So in *Hall* v. *Vandegriff*, it was held, that if A., the next heir in tail, releases to B., tenant in tail in possession, the statute does not begin to run until the death of B. without issue. *Shepley* v. *Lytle*, (6 *Watts*, 500.) There must be laches in a party before the statute can begin to run against him. *Jackson* v. *Schoonmaker*, (4 *Johns. Rep.* 401.) *Doe* v. *Scott*, (4 *Barn. & Cressw.* 706; 10 *Eng. Com. Law Rep.* 443.) *Bassler* v. *Niesly*, (2 *Serg. & Rawle*, 354.) *Garwood* v. *Dennis*, (4 *Binn.* 326.) *Angel on Limitations*, 190. *Cro. Eliz.* 398. 3 *Co.* 77. *Plowden*, 252, 6.

Mr. *Cadwalader*, for the defendant in error, was stopped by the Court.

The opinion of the Court was delivered by

GIBSON, C. J.—The petition of Dr. Bensell to have his principal removed for mental incapacity, his agreement to pay for his maintenance as an insane patient in the Pennsylvania Hospital, his memoranda of a conversation with the deputy register, and his unfinished draught of a letter, are all evincive of an opinion that his principal was insane. But what has his opinion to do with the question whether he was actually so? We know that admissions by an agent in the course of the business, are evidence to charge the principal, because, in contemplation of law, they are the admissions of the principal; but we know not on what grounds they can be received to affect one who has done nothing to make them his own. To suffer an agent's by-play to impugn his acts, would open a wide field to collusion with his principal. Without, then, a ground laid by evidence of conspiracy with the party to be affected, no trace of which is discoverable in this record, an agent's surmise that his principal was mad, is incompetent to prove him so.

Of the remaining point, little more need be said, than that it is ruled by *Thompson* v. *Smith*, (7 *Serg. & Rawle*, 209;) in which a title that had accrued during infancy, was barred at the expiration of the indulgence allowed to that disability, though coverture had intervened and continued, without intermission, till suit brought. The principle of that case arises directly out of the words of the

statute. " If any person," it is said in the proviso, " having such right or title, shall be, *at the time such title first descended or accrued,* within the age of twenty-one years, *feme covert, non compos mentis,* imprisoned, or beyond sea, and without the United States," such person shall have ten years to bring suit after coming of age, &c. Thus, disabilities subsequently accruing, are not provided for; and for that reason, the statute, having once started, runs over every obstacle: which accords with the construction made by the British Courts of the proviso in the statute 21 Jac. 1, of which ours is a transcript, as in *Cotteral* v. *Dutton,* (4 *Taunt.* 825,) and *Durore* v. *Jones,* (4 *T. R.* 410.) Were it not for this, a play of alternate disabilities might keep a right of entry afoot indefinitely. If, then, there was such a right in Engle Bensell, who, though to be taken for a lunatic, was not an infant, the plaintiffs who represent him cannot call their infancy in aid of his disability; for though they may have been infants when the land was conveyed by his agent, it was not their infancy which prevented him from contesting the validity of the deed by an action.

It is said that being insane, and consequently incompetent, as it is supposed, to stultify himself, he had not a right of entry, because he could not prosecute it by action. If that were so, the saving, in cases like the present, would be unnecessary; for the heir or alienee would have a longer period of indulgence without it. To give him ten years from the cessation of the disability, did the statute only then begin to run, would be absurd. But that a lunatic would have right of entry, notwithstanding a well founded personal incapacity to prosecute it by action, especially when he might prosecute it by entry, is evident from the admitted capacity of a committee to prosecute it on his title; for it cannot be pretended that such a right, when founded on the invalidity of a lunatic's act, arises, for the first time, at the finding of an office. In that respect, he might, were it necessary, be put in the predicament of an alien enemy, whose personal incapacity to sue is independent of his cause of action. But no rule founded on so absurd a supposition as that a man cannot tell whether he was out of his senses at a particular period, or what he did when he was so, can hold its ground; and the wonder is, that it has been endured so long by the British Courts. Who, that has conversed with an insane man, has not heard him speak of past transactions with entire accuracy; and is it credible that restoration to reason has the effect of effacing past impressions ? That memory is often more intense in madness than in health, that a maniac can frequently trace the disordered action of his mind through all its wanderings in the wildest delirium, and that he is, at the time, often semi-conscious of the fallacy of his illusion, is shown in a recent narrative of his own case, by an unfortunate son of the unfortunate premier, Mr. Percival—a narrative which, by its minute delineation

Vol. v.—48

(Bensell *v.* Chancellor.)

of the morbid sensibilities and distempered, but preternaturally acute, perceptions of a religious madman, has, it is conceded, added more to the stock of professional knowledge in regard to the moral treatment proper for an insane patient, than all that had preceded it thrice told. But of what importance are his perceptions or his reminiscences ? The question has regard, upon principle, not to what he can recollect, but what he can prove. How then does it stand on authority ? That one who has been insane shall not be received to allege his own infirmity, or to blemish himself, as it is sometimes improperly called, is by no means settled in England at this day. Till the reign of Henry the sixth, it is admitted on all hands, the law was held that he might; and Mr. Powell, in his Treatise on Contracts, page 19, admits, that if the reason of the thing coincided with it, the weight of authority might be admitted to be that way ; but he thinks it decisive that, unlike infancy, to which it has been compared, this particular disability may be feigned, and that the law therefore must necessarily preclude the possibility of fraud from it, by precluding an allegation of the fact from which it might spring. Now to say nothing of the impossibility of suppressing all transactions that may be infected with fraud, or of the inconsistency of precluding the lunatic himself from alleging his infirmity, in order to be secure against imposition, and yet allowing his committee to do it for him, it may be remarked, that the assertion of dissimilitude is unfounded in fact, as very clear proofs of infancy may be counterfeited ; and I have known a party, on the other hand, overreached by an assumed capacity to convey. On the other side of the question stands the name of Mr. Fonblanque, (b. 1, ch. 2, § 1, note f,) who thinks that Fitzherbert's doctrine, in opposition to that which is supposed to be currently received, is sustained, as well by his reasons as his authorities. Sir William BLACKSTONE speaks of the notion that a man shall not be admitted to plead his insanity, with evident disparagement. It is however but a question of pleading, after all ; for no one has ventured to question the decision in *Yates* v. *Boen,* (2 *Stra.* 1104,) in which lunacy was given in evidence under *non est factum.* Indeed, that precedent was followed in *Foulder* v. *Silk,* (3 *Camp.* 125,) and even so late as *Bagster* v. *Portsmouth,* (7 *Dowl. & Ryl.* 614,) Mr. Justice LITTLEDALE went the whole length of affirming that a deed might be avoided by a plea of lunacy ; though in *Brown* v. *Joddrell,* (3 *Car. & Payne,* 30,) Lord TENTERDEN intimated that a lunatic might not allege his incapacity, unless he had been imposed on in consequence of it. That however was said in reference to a contract for work and labour done ; which, if not otherwise unfair, cannot be avoided by the lunatic, or any one else. Finally, in *Turner* v. *Meyers,* (1 *Hagg. Cons. Rep.* 414,) it was held by Sir WILLIAM SCOTT, for clear law, that a party who was deranged at the time of his marriage, may come into the Ecclesiastical Court to maintain

(Bensell v. Chancellor.)

his own past insanity; and that a defect of capacity from that cause invalidates the contract of marriage as well as any other. Thus stands the controversy in England.

In the United States, we have an explicit opinion by the distinguished author of the Commentaries on American Law, (2 *Kent*, 451,) that the doctrine of Littleton and Coke is manifestly unjust, absurd, and actually exploded; in which he is sustained by *Webster* v. *Woodford*, (3 *Day's Rep.* 90;) *Grant* v. *Thompson*, (3 *Conn. Rep.* 203;) *Mitchell* v. *Kingman*, (5 *Pick.* 431,) and *Rice* v. *Peet*, (5 *Johns.* 503.) Whatever, then, may be the rule in England, I take it to be settled in America, that the party himself may avoid his acts, except those of record and contracts for necessaries and services rendered, by allegation and proof of insanity. As then Engle Bensell had a right of entry on which he was competent to maintain an action, the bar was complete at the expiration of twenty-one years from the conveyance; for the statute, beginning its course by reason of his capacity to regain the possession, ran over the intermediate freehold of Dr. Bensell under the will, and overreached the ten years allowed for the particular disability.

Judgment affirmed.