## ROGERS v. WALKER.

Inquisition of lunacy cannot be avoided collaterally for want of service of notice of the holding of the inquest; and that defect is cured by a subsequent traverse.

A purchaser from a lunatic has no equity to be reimbursed his purchase-money or the cost of improvements.

The finding of the inquest is evidence of lunacy for the jury, and does not merely operate to throw the burden of showing a lucid interval on the purchaser.

After proof of insanity in the opinion of friends or the common report of the neighbourhood, the burden of showing a lucid interval, or sanity, is upon the purchaser.

Giving in evidence a lease, for the purpose of showing fraud, which recited title out of the lunatic, does not stop the lunatic from claiming title.

IN error from the District Court of Allegheny county.

*Sept.* 9, 10. Ejectment by Mary Walker, a lunatic, by her committee. The plaintiffs showed a deed from William Rogers, the defendant, and another, assignees of Isaac Walker, to Mary Walker, dated April 1, 1837, and, for the purpose of showing title merely, an inquisition in 1845, finding her a lunatic.

The defendant showed a lease from Mary to Isaac Walker, dated April 1, 1837, acknowledged before the defendant, a justice of the peace, on the 22d March, 1838, and recorded.

In April, 1838, Mary Rogers, by deed reciting a lease from Isaac Walker to William Rogers, of the property now in question, and part of that demised by her to Isaac, released the property and the assignee from all claim to the rent.

On the 2d May, 1840, Mary Walker executed a deed for the property to William Rogers.

He then gave some testimony showing the general sanity of Mary Walker.

The plaintiffs then offered the inquisition, which was objected to, and exception noted; because no notice had been given to the lunatic. This inquisition found her lunatic since 1832, without

lucid intervals. On a traverse by one Anderson at the instance of Rogers, the defendant, the finding was confirmed.

The plaintiff then gave evidence of the continued insanity of Mary Rogers, and under exception was permitted to prove by the attending physician, who had known her one year, his belief that her derangement was confirmed, and had continued a long time: his opinion was based on his own examination, and the history of the case as detailed to him by others.

The defendant having also given some evidence of a fraudulent contrivance on the part of Rogers, gave in evidence the lease from Isaac Walker to Rogers, which recited the demise from Mary to Isaac Rogers.

His honour, LOWRIE, J., left to the jury the question of sanity at the execution of any one of the conveyances or leases, saying, that the validity of either of those instruments would defeat this action. And that if a general but not continued derangement was found, it was for the defendant to show a lucid interval at the execution of one of the instruments. On this question, the jury were directed to take into consideration the inquest and the finding on the traverse. The question of actual fraud was also left to the jury, with instructions that if insanity or fraud were found, the plaintiffs might recover. The other points ruled against the defendant, were—1. That Mary Walker did not acquire any title, if, at the date of the deed to her, she was incompetent to contract. 2. If there was no fraud, but mere insanity, the plaintiffs could only have a verdict conditional on paying for improvements, (there was evidence of permanent improvements having been made by defendant.) 3. That plaintiffs by giving in evidence the lease by Isaac Walker to defendant, which contained a recital of the lease from Mary to Isaac, had shown title out of her, which they could not gainsay.

The admission of evidence, which it is stated above was excepted to, and the charge of the court, were excepted to. There was an additional exception for permitting plaintiffs to withdraw certain testimony which the court permitted, believing it to be immaterial. This was evidence that the plaintiff's first cousin was insane, which had been proved under an offer to show insanity in her ancestors.

*Hampton* and *Loomis*, for plaintiff in error, cited Dunlop's Dig. 663; also cite Chase *v.* Hathaway, 14 Mass. Rep. 222; Ex parte Cranmer, 12 Ves. 455; Neiman *v.* Ward, 1 Watts & Serg. 78; Parker *v.* Donaldson, 6 Watts & Serg. 132; Penrose *v.* Griffith,

4 Binn. 231; Annandale *v.* Harris, 2 P. Wms. 432; Thurston *v.* Slatford, 1 Salk. 285; Dickinson *v.* Barber, 9 Mass. Rep. 225; 2 Bl. Com. 291; Jackson *v.* Gumaer, 2 Cow. 568; Booe *v.* Mix, 17 Wend. 119.

*Woods* and *McCandless*, contrà.—The contract with the lunatic was absolutely void at her election: 2 Kent, 450; Desilver's Estate, 5 Rawle, 111. And the recovery is without regard to the price paid, or improvements on the land: Tucker *v.* Moreland, 10 Peters, 73; Shelf. Lun., 2 Law Lib. 419; Neill *v.* Morely, 9 Ves. 478. Nor can the proceedings be attacked collaterally: they are like other proceedings of courts of competent jurisdiction. The rule is, that after evidence of insanity the burden of showing lucid intervals was upon the defendant: Shelf., 2 Law Lib. 50, 64, 260; Attorney-general *v.* Parnther, 3 Bro. C. C. 443. They also cited Hutchinson *v.* Sandt, 4 Rawle, 234; Unangst *v.* Kramer, 8 Watts & Serg. 401; 4 Barr, 319.

*Sept.* 20. GIBSON, C. J.—It is scarcely necessary to say that the inquisition and verdict on the traverse of it, were competent evidence in the first instance. The general principle is that an inquisition of lunacy is *primâ facie* evidence against third persons: the exception attempted is, that proof was not made before the inquest that notice of the execution of the commission had been served, pursuant to the statute, on the plaintiff or any of her friends. But the defect cannot be urged to reverse the proceeding collaterally. The inquisition might perhaps have been quashed for it, on motion to the court from which the commission issued; but as a traverse was taken and found against the traverser, it remained in force and could not be treated as a nullity. As there is an endorsement on the inquisition that the copy of a notice had been left at the plaintiff's house, by a person who does not, however, appear to have been sworn, proof of service might, and probably would, have been made on a motion to quash; but to say nothing of that, the inquisition was actually traversed, by the plaintiff's next friend, and it is settled that want of summons or notice is cured by subsequent appearance.

The direction that the plaintiff might, by her committee, recover back the land conveyed by her when insane, without restoring the purchase-money or compensating the defendant for improvements, was entirely proper. Since the time of Thompson *v.* Leack, Carth. 435, S. C. 2 Salk. 427, it has been held that a lunatic's conveyance

executed by sealing and delivery of it only, is absolutely void as to third parties; and why not void as to the grantor? It is said not to be so for the very unphilosophic reason that the law does not allow him to stultify himself—an early absurdity of the common law, which was exploded with us by Bensell *v.* Chancellor, 5 Whart. 371, in which it was held that a grantor may avoid the deed by showing that he was insane when it was executed. Though for feudal reasons, a lunatic's feoffment is not void but voidable, and though the statute of 1715 gives to recorded conveyances the force and effect of a feoffment, "for the giving of possession and seisin," yet it was held in McKee *v.* Pfoutz, 3 Dall. 486, and In re Desilver, 5 Rawle, 111, that the intent was no more than to dispense with actual livery, and not to give seisin transferred its feudal qualities and consequences. The plaintiff therefore had a clear title at law; and what right had the defendant to control it in equity? Only the right he may be supposed to have derived from his bargain with an insane woman, who was an object of protection in equity 'as well as at law. No right can spring from a void and prohibited contract; and the defendant had none. He expended his money on the land of another, who was as unconscious of her ownership as he was himself; and who, had she known it, had not capacity to assert it. The case is as strong for the plaintiff in this case as it was in Crest *v.* Jack, 3 Watts, 240, in which it was held that no equitable estoppel arose from improvements on a silent owner's land by one who was equally informed of the state of the title. Where neither party was acquainted with it, the loss must be borne by him who occasioned it.

Exception was taken to the direction to take into the jury's consideration the inquisition and the finding of the jury of traverse, as well as the facts proved on the one side and on the other; and the argument in support of it is, that the inquisition and verdict, being only *primâ facie,* did but shift the burden of proof from the plaintiff to the defendant; and that having done that office, they were, as antagonist proofs, to be laid out of the case, leaving to the defendant's evidence in rebuttal a natural and an unobstructed course. But like a legal presumption, an inquisition continues to operate till it is overpowered; and standing as full proof till then, it necessarily remains before the jury till the question of sanity has been decided by them. It consequently stands as a particular in the proofs. The distinction attempted is founded on a supposed difference in words rather than in substance.

The next exception also is groundless. The presumption of the

law is undoubtedly in favour of sanity in the first instance; but it may be rebutted by an implication of insanity made by friends and relatives, or by the common report of the neighbourhood; and then an opposite presumption prevails that the state of the party's intellects remains unchanged, till a lucid interval is shown. And so far is it carried, that when he has been put under the governance of a committee, or any other restraint proper for his condition, the burden of proving the existence of a lucid interval at the time of the transaction, is cast upon him who attempts to found a right upon it. The substance of the principle was delivered to the jury to whom the decision of the question exclusively belonged, whether the testimony of the only witness called for the purpose proved the fact of such an interval. The remarks of the judge indicating what he supposed to be the true path to a sound conclusion, did not restrict their choice.

The question of actual fraud depended on facts which also were for the jury; and the question for the court was whether there was evidence of it to be submitted. But if the witnesses were believed, the defendant's conduct was a tissue of design from the beginning to the end of it. It is strange that he should have assigned error in this part of the charge. Every thing said by the judge was not only adapted to the circumstances of the case, but proper to point out the bearing of the evidence on the conclusion.

It was urged that by using the lease from Isaac Walker to the defendant, which contains a recital of the previous lease from the plaintiff, she ratified her own deed, and precluded herself from alleging want of capacity on her part at the execution of it. As the point would show the right to the possession to be out of her, it would be decisive if it were well taken. But the lease which contains the recital, was adduced, not as a link in the chain of the plaintiff's title, but as a link in a chain of contrivances to get hold of it. The exhibition of it, as such, was no assertion of a claim inconsistent with her present pretensions. It might have been otherwise had she attempted to make title under the lease and not in opposition to it; but she claimed paramount to it, and exhibited it as a canker in the defendant's case. She is chargeable, therefore, with no inconsistency of assertion; and she is estopped by none.

The remaining exceptions form a reticulated web to catch the crumbs of the cause; and as they contain no point or principle of particular importance, they are dismissed without further remark.

Judgment affirmed.