## Noel *versus* Karper.

1. An inquisition finding that a party is a lunatic or habitual drunkard, is primâ facie evidence of incompetency at any time covered by the finding, and the burden is upon the party setting up a contract of the lunatic or habitual drunkard to show that he was sane at its execution. King, P. J.

2. In such case it must be shown that the lunatic or habitual drunkard had memory and judgment enough to understand the character of the act, and the legal responsibility entailed thereby. *Id.*

3. The presumption in favor of sanity is changed by the fact that there was such inquisition. *Id.*

4. Proof of fixed habits of intemperance for two years would not, aside from such finding, shift the burden of proof so as to require the party setting up the contract to prove competency at the time of its execution. *Id.*

5. Evidence that "*about the time*" a lunatic or habitual drunkard signed a note as surety, the principal was treating him to drink, &c., is inadmissible.

6. Evidence that the lunatic or habitual drunkard was, when he signed the note, security for the principal in a large amount, and that the principal had no means or credit, is inadmissible.

ERROR to the Court of Common Pleas of *Franklin county.*

This was an action, brought October 1st 1864, by Philip Karper against Benjamin Cook and John Noel on two notes for $500 each, dated June 21st 1864, and payable in thirty days: $300 had been paid on the notes.

An inquisition, confirmed November 3d 1864, found that Noel, one of the defendants, was a lunatic, and had been for two years previously. Defence was made on behalf of Noel only, that he was *non compos mentis* when the notes were made.

On the trial it was proposed to prove for defendant:—

"That about the time the note in suit was signed, they saw Benjamin Cook, the principal in the note, at the tavern with Noel, treating him to whiskey and other intoxicating drinks; and, further, that when Noel was under the influence of drink, he was easily persuaded into the views of any person with whom he might happen to be."

This was objected to, because the evidence was not confined to the transaction in hand, and the defendants could give no evidence of the conduct of Cook, one of the defendants, at any other time, or on any other occasion. The evidence must be confined to the day of the execution of these notes.

The evidence was rejected.

Also "that John Noel, about the time the note in suit was given, bailed Benjamin Cook in a number of notes, amounting in the aggregate to about $2000. Also, to prove in the same connection that Benjamin Cook was a man without means and without credit at the time these endorsements were made for him, and was well known to be so by every one in this commu-

3 P. F. SMITH—7

nity; that judgments for large sums of money are of record in the Court of Common Pleas of Franklin county against him ripe for execution, and were in existence there when the note was signed."

This was objected to because impertinent to the issue; becoming security for any one being no evidence of insanity.

The evidence was rejected.

The plaintiff submitted the following points:—

" 1. The contracts of habitual drunkards are valid before the finding of an inquisition. As the inquisition in this case was found after the execution of the notes in suit, the plaintiff must recover, unless the defendant have shown to the satisfaction of the jury, that at the time of the execution of the notes the defendant was *non compos mentis*.

2. An inquisition of lunacy is only primâ facie evidence of lunacy, and may be rebutted by the testimony of those persons who were acquainted with the alleged lunatic, and who knew him to be of sound mind, and, therefore, if the jury believe from the evidence that John Noel was of sound mind at the time of the execution of the notes, plaintiff must recover.

3. The presumptions of law are in favor of sanity, and if Noel knew the value of the note when he signed it, plaintiff must recover; and as the counsel for Noel assert that he was insane at the time, the burden of proving that insanity is on the defence, and if they have failed the law presumes he was sane when the act was done.

4. This is a case of alleged drunkenness, and therefore the burden of proving that Noel was so drunk as not to know what he was doing at the execution of the notes, is on Noel."

The defendant's points were:—

" 1. The inquisition taken on the 1st day of November, A. D. 1864, having found John Noel *to be a lunatic for two years prior to that date*, thus antedating and covering the 21st of June 1864, the time at which the note in suit was executed, not only shifts the burden of proof upon the plaintiff, to show a lucid interval at the time the note was signed, but like a legal presumption it continues to operate until the sanity of Noel, at the time the note was given, has been clearly and satisfactorily proved to the jury.

2. If the jury believe from all the evidence in the cause that Noel was an habitual drunkard for one or two years prior to the execution of the note, the law presumes that he was incapable of managing his estate or of making a contract, and the burden of proof is on the plaintiff, to show that at the time the note was signed Noel was sober and had capacity to make a contract.

3. If the jury believe that for one or two years prior to the signing of the note, Noel was more or less drunk every day and that intemperance was the fixed and prevailing habit of the man,

[Noel *v.* Karper.]

the burden of proof is on the plaintiff to show that he was sober when the note was signed, and the opinions of witnesses who saw him when sober and speak of his capacity at such a time, are of little value in this case, unless the plaintiff can satisfy the jury from the evidence that he was sober when he signed the note.

4. In order to make a binding contract, Noel must have had memory and judgment enough to comprehend and understand the character of the act and the legal responsibility entailed upon him thereby.

5. There is no evidence in this case that the note was either read or explained to Noel, and in the absence of such proof the legal presumption that a man understands and knows the contents and legal effect of the paper he has signed, does not apply to a man of such excessively intemperate habits as·Noel was proved to have had at the time he signed the note, and for more than one year anterior thereto.''

The court (King, P. J.), after stating the facts, charged:—

" The plaintiff and defendant in the 1st point, submitted by each, take directly opposite positions. On the one side, it is urged that the inquisition of lunacy, produced in evidence, finding that John Noel on the 1st day of November 1864 was aged sixty-nine years, and was by reason of lunacy incapable of managing his estate, and was wasting and destroying the same ; and that he had been in the same state of incapacity for the space of two years then last past, and thus reaching back to a period prior to the date of the execution of the notes in suit, not only devolves upon the plaintiff the necessity of showing that Noel, the defendant, had a lucid interval at the time he signed the notes, and was competent to execute them, but that, like a legal presumption, the insanity proved by the inquisition continues to exist, in contemplation of law, until the contrary is established. On the other side, it is insisted that it is incumbent on the defendant to show that he was *non compos mentis* at the time of the execution of the notes, the presumption of law being that he was sane. The authorities seem to have settled that an inquisition finding a party either a *lunatic or habitual drunkard,* is primâ facie evidence of incompetency to make a contract at any time covered or overreached by the finding, and imposes upon the party introducing a contract executed by a lunatic or habitual drunkard, the burden of proving him to have been of sound mind at the time of the execution thereof. This looks like a severe rule, when it is made to operate against one who had no notice of, and was in no way interested in the proceedings *de lunatico inquirendo ;* but it is the rule nevertheless, as we understand the decisions, and it is our duty so to declare it. In order, therefore, to entitle the plaintiff to a verdict, it is his duty to satisfy you that Mr. Noel was of sound mind and memory when he

[Noel *v.* Karper.]

signed the notes, and understood the nature and extent of the obligation he assumed by becoming the surety of Benjamin Cook. In the language of the defendant's 4th point, it must be shown that Mr. Noel 'had memory and judgment enough to understand the character of the act and the legal responsibility entailed thereby.' This is the correct standard of capacity in cases of this description; and you must determine from all the evidence, whether Mr. Noel possessed such capacity or not. It is a question of fact for you, and one which the court has no right or power to decide.

" The 2d point of the plaintiff is inconsistent with his 1st one, as it concedes that the inquisition is primâ facie evidence of lunacy; but it announces a correct rule in requesting the court to say 'that if the jury believe from the evidence that Mr. Noel was of sound mind at the time of the execution of the notes, the plaintiff must recover.'

" The propositions contained in the 3d and 4th points of plaintiff have been substantially noticed in what we have already said to you, but we add that the fact that there was an inquisition of lunacy changes the presumption of law in favor of sanity. There is a general rule in regard to such presumption, but it is inapplicable to this case.

" We have already noticed and disposed of the 1st and 4th points of defendant, and have affirmed his 2d point. In answer to the 3d, we instruct you that every man of full age is presumed to be able to make contracts until the contrary is proved. That Mr. Noel had fixed habits of intemperance for two years, was proper to be proved under the pleadings in the case; but aside from the proceeding *de lunatico inquirendo,* proof of the existence of such habits would not shift the burden of proof as assumed in this point.

" The 5th and last point of the defendant asserts, that there is no evidence that the notes were read and explained to Noel, and that in the absence of such proof the legal presumption that a man understands the contents and legal effect of the paper he has signed, does not apply to Mr. Noel under the facts of this case. It is not disputed that the signature to these notes is in the proper handwriting of Mr. Noel, but whether he understood the contents of the notes is a question for the jury, and we cannot say, nor are we required to say, that he did not know he was signing promissory notes as surety of Cook, because it has not been proved that the notes were read or explained to him. Further notice of this point of the defendant is unnecessary, as we have already instructed you that the burden of proof that Mr. Noel was of sound mind when he executed the notes, has been devolved upon the plaintiff by the inquisition of lunacy. If the plaintiff has been able to satisfy you that Noel was of sound

[Noel *v.* Karper.]

mind, according to the standard we have given you, he is entitled to your verdict; and if he has failed to do so, the verdict must be for the defendant.

"The testimony of all the witnesses discloses the undeniable fact that Mr. Noel was very much addicted to intemperance; but how far his mind, at the time he signed the notes, was impaired or destroyed, is the question presented to you. Whilst it is every day's experience that many persons who are constant drinkers go to the grave with minds not only not destroyed but not very seriously weakened, it is unquestionably true, that most men, who yield themselves to an excessive indulgence in the use of intoxicating drinks, must sooner or later suffer severely both in mind and body. How was it with Mr. Noel, and particularly, how was it with him when he signed these notes? You must conduct this inquiry bearing always in mind that the burden of the proof rests upon the plaintiff, yet you are not precluded from considering all the evidence in the case—as it all bears more or less strongly on the point in issue."

The defendant Noel excepted to the rejection of the evidence offered by him, and both parties excepted to the charge of the court.

The verdict was for the plaintiff for $769.29.

Noel took out a writ of error, and assigned for error the rejection of the evidence offered by him, and the refusal of the court to affirm his 5th point.

*G. W. Brewer, J. McD. Sharpe* and *Stambaugh & Gehr*, for plaintiff in error.—Great latitude is allowed in admitting evidence in cases of fraud: Baltimore and Ohio Railroad *v.* Hoge, 10 Casey 214; Reinhart *v.* Keenbartz, 6 Watts 93; Kaufman *v.* Swar, 5 Barr 230; Smull *v.* Jones, 1 W. & S. 138; Reeme *v.* Parthemere, 8 Barr 461; Miller *v.* Stem, 2 Jones 386; Brown *v.* Clark, 2 Harris 469; Stevenson *v.* Stewart, 1 Jones 309; Kinzer *v.* Mitchell, 8 Barr 64.

To make Noel responsible he should have had mental capacity enough to have comprehended his relations with Cook, and to have grasped the past and future as well as the present: Commonwealth *v.* Freeth, 6 Am. Law Reg. 400; Leech *v.* Leech, 9 Harris 67; Ludwick *v.* Commonwealth, 6 Id. 172; Imhoff *v.* Witmer's Administrators, 7 Casey 244.

*F. M. Kimmell* and *G. Eyster*, for defendant in error.—Whatever is not of a nature to beget mental conviction upon the point under inquiry, is irrelevant evidence: Stauffer *v.* Young, 3 Wright 460. It is not clear the finding of lunacy by an inquest, throws upon a party setting up a contract made before the finding,

[Noel *v.* Karper.]

the burden of proving competency : Willis *v.* Willis, 2 Jones 158 ; Beales *v.* See, 10 Barr 56.

The opinion of the court was delivered, June 25th 1866, by

READ, J.—The charge of the court states the law with great clearness and precision, and no exception is taken to any part except to the answer to the defendant's 5th point, and we think the answer itself was perfectly proper, for it submitted to the jury whether the defendant understood the contents of the notes which he signed and upon which this suit was brought.

We also think there was no error in·rejecting ·the testimony which forms the 1st and 2d specifications of error, as it was clearly irrelevant.

Judgment affirmed.