## Morgan, etc., v. Continental Credit Corporation

*W. Wilson White,* for plaintiff
*Joseph J. Cohen,* for defendant.

CRUMLISH, J., March 20, 1947.—This is an action in assumpsit to recover the sum of $920, allegedly paid by plaintiff to defendant for an "option" to buy a 1941 Chrysler, and an additional sum of $2,000 as exemplary damages. Plaintiff's guardian ad litem, appointed for the purpose of bringing this action, alleges that plaintiff is now, and was continuously since a date prior to December. 30, 1946, mentally incompetent as a result of disability sustained during service in the Army of the United States, and that on December 30, 1946, this incompetency was "apparent in his conversation, bearing and general appearance"; that defendant, through its authorized agents, knew of this incompetency on December 30, 1946, but despite this knowledge entered into negotiations with plaintiff as the result of which plaintiff paid to defendant the sum of $920 in accordance with a "purported agreement . . . reduced to writing upon a printed form prepared by defendant entitled 'Option' " which reads in part as follows:

"OPTION
Continental Credit Corporation No. 1324
Used Car Dept.
1532 N. Broad Street
Philadelphia, Pa.

Date 12/30 1946

Received from Mr. Raymond J. Morgan
ADDRESS 63 East Walnut Lane Phila

The sum of $920.00 as option on 1941 Chrys sdn automobile as is. Purchase Price $1450.00. The balance $530.00 plus Int is to be paid or financed by the purchaser on or before 12/31/46"

The "Option", a photostatic copy of which is attached as Exhibit "A" to the complaint, contains additional conditions, in small print, to the effect that failure to make settlement on or before date specified will result in forfeiture of the amount deposited as liquidated damages; that defendant will not be liable for delay or failure to make delivery through any cause whatsoever; that the automobile is a used automobile and there are no promises or warranties other than the above; and that the option will not bind defendant until accepted by the proper officer of defendant company. The writing is signed "Continental Credit Corp. By C. J. R ? ? ?" and by plaintiff, Raymond J. Morgan. It is further alleged that, being well aware of plaintiff's incompetency, and in order to obtain immediate payment of the $920, defendant wrote a letter to the bank in which plaintiff had a savings account, said letter fraudulently, falsely and knowingly stating that plaintiff was employed and needed the automobile for purposes of his employment; and that, because of this letter, the bank permitted the withdrawal of $920 without further notice, which sum was paid to defendant; that on December 31, 1946, plaintiff requested the return of the $920 but defendant refused; that defendant refused subsequent requests for the money made by plaintiff's family and by his guardian; that the automobile has never been delivered or tendered to plaintiff; and that the refusal to return the money is a "wilful and wrongful violation of plaintiff's rights". Whereupon, alleging wilful and wrongful violation of defendant's obligation to return the money, implied in law, in an attempt to assert an oppressive and illegal penalty or forfeiture,

and a wanton disregard of the rights owed a person in plaintiff's condition, plaintiff claims the sum of $920, and an additional sum of $2,000 as an "award of exemplary damages . . . which will tend to prevent a repetition of a similar wrong upon one in plaintiff's condition".

Defendant has filed preliminary objections to the complaint and a petition and rule to vacate the decree appointing the guardian ad litem. The objections and petition were argued together and will be disposed of in this one opinion.

## Appointment of guardian

The record reveals that a petition for the appointment of a guardian ad litem was filed by plaintiff's parents, alleging plaintiff's mental incompetency and his cause of action. The petition was allowed and the guardian appointed by President Judge Oliver. There is no formal requirement, such as notice to a defendant, that must be satisfied before a judge appoints a guardian, except that he be satisfied of the need therefor. Rule 2053 (a) of new Rules of Civil Procedure provides that "When an incompetent is a plaintiff he shall be represented by a guardian or by a guardian ad litem who shall supervise and control the conduct of the action in his behalf." Rule 2056 (a), which applies only when the incompetency is discovered during the pendency of the action, authorizes the court to "forthwith appoint a guardian ad litem" if it "shall find that the plaintiff is an incompetent". Undoubtedly, Judge Oliver was satisfied in this case, and we need not go further. Defendant's only reason to interfere with the appointment of a guardian ad litem is the possibility that the appointment, if unwarranted, would result in defendant paying the sum due plaintiff into the wrong hands and thus subjecting itself to a second liability. We are not impressed by this contention. In the case before us, if the appointment

was made in error, defendant will not be harmed. Unless plaintiff's incompetency is proved in the trial of the instant case, there will be no judgment against defendant since proof of this fact goes to the merits of the claim; and, before a judgment may be entered against defendant, the incompetency will have to be proved. Furthermore, as a general proposition, the appointment of the guardian ad litem does not change plaintiff's burden of proving the incompetency; it is only after the actual adjudication of lunacy that the presumption of insanity arises, and even then it may be overcome by proof: Rogers v. Walker, 6 Pa. 371, 374 (1847); Noel v. Karper, 53 Pa. 97, 99 (1866); Mulholland et al. v. Sterling Motor Truck Co., 309 Pa. 590 (1933).

### Preliminary objections

Defendant objects to plaintiff's choice of action and seeks to limit him to an action in equity for rescission. Although equity will grant the return of the money (Aiman et al. v. Stout, 42 Pa. 114 (1862); Polt v. Polt, 205 Pa. 139 (1903)), assumpsit is also proper: Beals v. See, 10 Pa. 56 (1848); Patterson, Guardian, v. Snider et ux., 305 Pa. 272 (1931).

The request for exemplary damages, however, cannot be so readily sustained. Exemplary damages (often called "punitive damages" or "smart money") are granted to plaintiff over and above the actual loss suffered, and, although frequently criticized, are well established in our law today. Such damages, granted as punishment of defendant and as a warning to others, are in the nature of a fine, and they are awarded only in those rare instances where the acts complained of are wanton, reckless, malicious or oppressive: Hazard v. Israel, 1 Binney 240 (1808); Barnett v. Reed, 51 Pa. 190, 191 (1865); The Phila. Traction Co. v. Orbann, 119 Pa. 37, 44 (1888); Hughes v. Babcock et al., 349 Pa. 475, 480 (1944); 1 Sedgwick on Damages,

§347 et seq.; A. L. I. Restatement of Torts, §908; The Measure of Damages for Malicious Torts in Penna., 18 Penna. Bar Assn. Quarterly, 192 (1947) (article by Victor J. Roberts).

Ordinarily, exemplary damages are available only in tort actions, and are not awarded for breach of contract: 5 Williston on Contracts, §1340; 1 Sedgwick on Damages, §370; 15 Am. Jur. 708, §272; 25 C. J. S. 716, §120; 17 C. J. 976, §272. A. L. I. Restatement of Contracts, §342, states that such damages are never available in contract actions and reconciles its position by analyzing the so-called exceptions (15 Am. Jur. 709, §273) and showing that the damages, although speculative and difficult to calculate, are in fact compensatory. Also see 5 Williston on Contracts (1937 ed.) §1340, 1340 A. The Pennsylvania rule was stated in Hoy v. Gronoble, 34 Pa. 9 (1859), when Justice Strong said, at page 11:

"This is something more than compensation. It is an allowance of vindictive damages, which is not permitted in actions for a breach of contract, with very rare exceptions, perhaps in none, except the single case of breach of promise of marriage." See 84 A. L. R. 1345, 1347n.

If it were not for the strong line of authority to the contrary, we would not hesitate to permit exemplary damages in this case. As stated in 15 Am. Jur. 709, §273:

"This rule does not obtain, however, in those exceptional cases where the breach amounts to an independent, wilful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression. . . ."

The conduct here alleged, and for this purpose we must take the facts to be as plaintiff's guardian alleges them, is just as malicious, oppressive and outrageous as any we might find in a tort action. In fact, the situa-

tion with which we are presented sounds more like a tort than a breach of contract. Primarily, the action is based on a quasi-contract which is neither express nor implied in fact, but is one which is implied by law (Hertzog v. Hertzog, 29 Pa. 465, 468 (1857)) and binds defendant in spite of any intention to the contrary: Cameron, to use, v. Eynon, 332 Pa. 529, 532 (1939). Secondly, statements which were known by defendant to be false were deliberately and fraudulently written by defendant to plaintiff's bank so as to induce the bank to permit a withdrawal without the customary notice. Had the notice been for the protection of the depositor, instead of the bank, this alone would be sufficient to hold defendant liable in an action for fraud. Inasmuch as steps were taken to avoid the contract on the day following the payment of the money, it is clear that defendant would never have received the down payment if it were not for the letter. Furthermore, the fact that defendant knew of plaintiff's incompetency makes the situation closely analogous to those tort actions which revolve about the "assent" of one who in law is incapable of giving his "consent". In those situations, an invasion of the person or of the interest in the possession of one's property is tortious in spite of the purported consent: A. L. I. Restatement of Torts §§59, 252, 892, comment (e) ; and a taking, under such circumstances, would be a trespass. Had plaintiff given defendant a chattel, as a down payment, defendant's refusal to return it, under these circumstances, would be grounds for an action in the common-law form of trover for conversion, or in our present form of action for replevin.

Since the facts alleged come so close to stating a good cause of action in trespass or replevin, it is possible that plaintiff's evidence will establish the additional facts required to prove a tort. If so, plaintiff could then move to change the form of action (Bell Telephone Company of Pa. v. B. & O. R. R. Co., 155 Pa.

Superior Ct. 286, 289 (1944). Pa. R. C. P. 1033 leaves the prior practice unchanged in this respect: Goodrich-Amram, Actions at Law, Prelim. Surv. p. 128), and be permitted to recover exemplary damages. The fact that plaintiff's case might fit within both forms of action would not preclude him from recovering exemplary damages: A. L. I. Restatement of Torts §908, comment (*b*). If the proof falls short of satisfying the requirements of a trespass action, defendant's objections to the claim for exemplary damages can be satisfied by the charge to the jury.

### Order

And now, March 20, 1947, it is hereby ordered that the petition and the preliminary objections be dismissed, defendant to answer within 20 days.