**In Re Anonymous No. 1 D.B. 84**

Disciplinary Board Docket No. 1 D.B. 84.

HAMMERMAN, *Member,* November 28, 1984— Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## 1. HISTORY OF PROCEEDINGS

The within petition for discipline was filed on January 5, 1984 against [respondent], the within re-

spondent with respect to actions by him with respect to the affairs of [A].

The petition for discipline alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102 (A) (2): A lawyer shall not circumvent a disciplinary rule through actions of another;

b. D.R. 1-102 (A) (3): A lawyer shall not engage in illegal conduct involving moral turpitude;

c. D.R. 1-102 (A) (4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

d. D.R. 1-102 (A) (5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

e. D.R. 1-102 (A) (6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

f. D.R. 2-106 (A): A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee;

g. D.R. 3-102 (A): A lawyer shall not share legal fees with a non-lawyer;

h. D.R. 5-105 (B): A lawyer shall not continue multiple employment if the exercise of his professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests;

i. D.R. 5-107 (A): Except with the consent of his client after full disclosure, a lawyer shall not accept compensation for his legal services from one other than his client;

j. D.R. 5-107 (B): A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate

his professional judgment in rendering such legal services;

k. D.R. 7-101 (A) (1): A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available, lawful means;

l. D.R. 7-101 (A) (3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

m. D.R. 7-102 (A) (5): In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact;

n. D.R. 7-102 (A) (7): In his representation of a client, a lawyer shall not counsel or assist his client in conduct the lawyer knows to be illegal or fraudulent;

o. D.R. 7-102 (A) (8): In his representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule;

p. D.R. 9-102 (A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein;

q. D.R. 9-102 (B) (1): A lawyer shall promptly notify a client of the receipt of his funds, securities, or other properties;

r. D.R. 9-102 (B) (2): A lawyer shall identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable;

s. D.R. 9-102 (B) (3): A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into possession of a

lawyer and render appropriate accounts to his client regarding them; and

t. D.R. 9-102 (B) (4): A lawyer shall promptly pay or deliver to a client as requested by a client the funds, securities, or other properties in possession of the lawyer which the client is entitled to receive.

The charges of professional misconduct which led to the filing the petition for discipline involved respondent's association with [B] a non-lawyer doing business as a professional insurance agent. [A] had engaged [B] to formulate a life insurance program to provide funding for the purchase by it of their stock held by key employees upon the death of said employee. On or about September 11, 1978, [C], a key employee and shareholder of [A] executed an assignment for payments under a [D] Insurance Company policy to be made to the company. In his application, however, [C] named his wife, [E], as beneficiary for insurance in the total sum of $75,000. [C] died on September 11, 1980.

On November 20, 1980, the insurance company issued its draft in the sum of $75,000 made payable to the order of [E] only which was mailed to [B]. [A] refused to accept the draft from [B] and executed a power of attorney on December 16, 1980 for the purpose of obtaining a new draft from the insurance company naming the company as payee. [B] then consulted respondent about this problem and after such consultation [B] forged the signature of [E] of said draft and deposited the same in the escrow account of respondent.

After such deposit, respondent withdrew said sum to his own uses and purposes without the knowledge, consent or permission of either [A] or the widow. [B] and respondent then agreed that the sum of $15,000 as a fee would be split between respondent and [B]. Respondent thereafter by a series

of checks during December 1980, and January and February 1981 returned $68,000 to [B]. [B], on January 30, 1981 issued a check to [A] in the sum of $50,000. On or about February 23, 1981 [B] prepared a written progress report to [A] which fraudulently claimed that a full investigation had been made and that the balance of $25,000 would be forthcoming. Thereafter, [B] claimed that such sum had been consumed by legal fees. When [A] requested proof of payment of the fee, upon [B's] request, respondent provided a bill for legal services allegedly rendered to [A].

Respondent's answer to the petition for discipline filed on February 24, 1984 admitted all the allegations except that he denied that he had ever entered into a conspiracy with [B] to defraud [A] and/or [E] out of any portion of the said insurance proceeds.

This matter was then referred to hearing committee [    ] consisting of [    ] on February 27, 1984. A notice of hearing was sent to respondent on April 24, 1984 scheduling the taking of testimony in the matter for May 29, 1984. Hearing was duly held and the hearing committee filed its reports on August 3, 1984 recommending a five year suspension. A letter brief on exceptions was filed by the Office of Disciplinary Counsel and a brief opposing exceptions was filed by counsel for respondent with oral agreement requested.

The Chairman of the Board thereupon designated Mary Bell Hammerman, Chairperson with John M. Elliott, Esq. and James C. Schwartzman, Esq. as members of the panel and argument was scheduled for October 19, 1984 in [    ]. The matter was adjudicated by this board October 24, 1984 and the board by a majority vote recommends disbarment for this respondent.

## II. FINDINGS OF FACT

Respondent is a lawyer admitted to practice law in Pennsylvania who maintains an office in [ ] County, Pa. Respondent was born in 1939 and has been admitted to practice law in Pennsylvania since 1969, and has practiced in [ ] County full time since 1973.

[B] is a non-lawyer insurance agent who has known respondent since 1973. The testimony reveals that respondent and [B] have been personal friends as well as business associates. In addition, [B] had done some insurance work for respondent and respondent had performed legal services for [B]. [B] had been [A's] insurance agent for a number of years. Insurance on the lives of the shareholders was purchased through [B] for purposes of funding a buy-out of stock held by any key employee of [A], upon the death of any employee.

[B] furnished the company with group insurance which required that individuals be named as beneficiaries rather than the corporation and caused each key person to assign all payments due under the insurance policy due on his life to [A]. [C], a key employee, died on September 11, 1980 and as his wife was the beneficiary, the insurance company issued a draft in the amount of $75,000 to the order of [E] which was mailed to [B]. The check was delivered to [A] by [B] who was directed to secure the monies pursuant to the assignment for which purpose [A] gave [B] a power of attorney.

The hearing committee found that the check payable to [E] was deposited by [B] into respondent's escrow account with the signature forged by [B], which was known to respondent. Respondent then made extensive use of all the funds in the escrow account for personal purposes. [B] and respondent then arranged to keep $7,500 each for their alleged

services in this matter. [B] then prepared a written progress report to [A] fraudulently claiming that a full investigation had been made, that $50,000 had been obtained from the insurance company and that negotiations were continuing for the payment of the balance of $25,000. He then met with officers of [A] and advised them that the balance of the $25,000 had been consumed by legal fees. [A] then requested proof of payment of the $25,000 and respondent provided [B] with a letter dated July 28, 1981 along with a bill for legal services allegedly rendered. The committee found that the bill for legal services was false and intended to deceive the company.

The hearing committee concluded that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

1. D.R. 1-102 (A) (3): A lawyer shall not engage in illegal conduct involving moral turpitude;

2. D.R. 1-102 (A) (4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

3. D.R. 1-102 (A) (5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

4. D.R. 1-102 (A) (6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

5.. D.R. 1-106 (A): A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee;

6. D.R. 1-105 (B): A lawyer shall not continue multiple employment if the exercise of his professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests;

7. D.R. 1-107 (B): A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services;

8. D.R. 1-102 (A) (5): In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact;

9. D.R. 1-102 (A) (7): In his representation of a client, a lawyer shall not counsel or assist his client in conduct the lawyer knows to be illegal or fraudulent; and

10. D.R. 1-102 (A) (8): In his representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.

## III. DISCUSSION:

Respondent contends that he was engaged as counsel by [A] through [B], their agent. It is uncontroverted that [A] never agreed that [B] retain counsel of his own choosing. The power of attorney given by [A] to [B] was for the purpose of negotiating with the insurance company to draw another check made payable to [A]. The evidence is clear that [B] acted beyond his designated authority by forging the name of the payee, [E], and depositing such check in the escrow account of respondent. Respondent clearly knew that this procedure was illegal and compounded the unlawful conduct by withdrawing excessive sums of monies from his account to the detriment of other clients.

In the matter of Office of Disciplinary Counsel v. Lucarini, 405 Pa. 271, 472 A.2d 186 (1983) the court disbarred this respondent for, inter alia, repeatedly commingling funds belonging to clients with his own funds, converting funds belonging to

clients for his own use without their knowledge or permission and failing to maintain funds in escrow adequate to meet his obligations to his clients.

During oral argument, respondent attempted to condone his behavior by stating that he relied upon his long association with [B] and found that his loyalty was misguided. This honorable court disbarred respondent in the matter of Office of Disciplinary Counsel v. Tumini, 499 Pa. 283 453 A.2d 310 (1982) although Tumini also attempted to condone misconduct based on his indebtedness to his mentors for whom he swore falsely before the grand jury. The court stated on page 314, that . . . "Respondent's choice of loyalty over integrity must result in a recommendation of disbarment." See also In Re Anonymous, 27 D.&C. 3d 471 (1984).

In view of the many violations of the Code of Professional Responsibility and the knowledge of respondent that [B] had committed an act of forgery in which he acquiesced, respondent has clearly demonstrated his unfitness to practice law and degraded his profession.

## IV. RECOMMENDATION

The Disciplinary Board by a majority vote recommends that the respondent herein be disbarred from the practice of law and recommends further that respondent be ordered to reimburse the board for expenses incurred in processing this matter.

Messrs. Daniels, Elliott, Schwartzman and Mundy dissent and would recommend three year suspension.

Mr. Douglas did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this February 5, 1985, the recommendation of the Disciplinary Board dated November 28, 1984, is accepted, and it is ordered

that [respondent] be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Papadakos dissents and would suspend respondent for a period of three years.