## 22232

Ruben L. GRAY and Ernest A. Finney, Jr., formerly d/b/a Finney & Gray, Attorneys, Appellants, v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, Respondent.

(325 S. E. (2d) 547)

Supreme Court

*Jordan D. White,* of *Gray, Finney & White,* Sumter, *for appellants.*

*G. Dana Sinkler,* of *Sinkler, Gibbs & Simmons,* Charleston, *for respondent.*

Heard Jan. 9, 1985.

Decided Feb. 1, 1985.

NESS, Justice:

This is an equitable action by the appellants Gray and Finney for repurchase of land condemned by the respondent Public Service Authority (PSA) in 1941. The trial court entered judgment for the respondent. We affirm.

In an equitable action tried by the trial judge without a reference, this Court can find the facts in accordance with its view of the evidence and correct errors of law. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976); *Indigo Realty Co., Ltd. v. City of Charleston,* 281 S. C. 234, 314 S. E. (2d) 601 (1984).

In 1910, Abe Levi conveyed 48 acres in Clarendon County to Charles Mouzon. Mouzon died intestate in 1920, survived by his third wife and eleven children. In 1941, the PSA condemned the property in order to construct the Santee-Cooper system. In July 1971, three heirs at law of Mouzon transferred their interests, if any, in the condemned property to the appellants. In October of 1971, the appellant Gray contacted the Authority orally about purchasing the portions of the condemned tract which had never been covered by water. Six years later, on August 1, 1977, he requested in writing that he and Finney be allowed to purchase the tract but

tendered no payment. The Authority refused to sell, and the appellants initiated this action in 1981.

Act No. 178 (1939), codified as S. C. Code Ann. §§ 28-3-10 (1976) et seq., gave the PSA power to condemn lands for the purpose of developing the Santee-Cooper lake and power facilities. A proviso to the Act states, however, that "if the lands or any portion thereof ... are not. occupied for the purposes of erecting dams ... (or)[1] unless said lands above the dams ... are actually covered with water, within a period of five years from the date of acquiring (the) lands ..., the owner of any tracts of land acquired by said State authority ... *shall have the absolute right to repurchase said lands from said State authority upon the payment by the owner* ... of the amount paid by said State authority to said owner...." Code § 28-3-30 (1976), emphasis added.

The Act additionally provides: "Unless the owner shall exercise his right to repurchase such lands within a period of one year from the expiration of the five years above provided, then said right shall cease upon the [A]uthority giving to said owner ninety days' notice that said right will expire at the end of said ninety days." The respondent admits that it never gave the ninety-day notice to the heirs.

The appellants contend that the Authority's failure to give the ninety-day notice to the heirs enables them to assert the repurchase right, even though the statute envisioned that the right would terminate in 1947. We disagree.

Statutes giving the right to eminent domain must be strictly construed, but repurchase provisions are construed broadly. *Cain v. South Carolina Public Service Authority*, 222 S. C. 200, 72 S. E. (2d) 177 (1952). However, to construe the statute so broadly as to uphold this claim would contravene the legislative scheme for quieting title to the lands near Santee. The purpose of the notice provision was to ensure that previous owners knew of the repurchase right and to provide an end to the right. We do not condone the PSA's failure to give notice. Yet, failure to send notice did not extend the right forever.

---

[1] The Statute reads "and" here. This Court interpreted the Statute to mean "or" in *Cain v. South Carolina Public Service Authority*, 222 S. C. 200, 72 S. E. (2d) 177 (1952).

The lapse of time rendered the action stale under the doctrines of laches, stale demand, and presumption of grant. Laches denotes negligent failure to act for an unreasonable length of time. *Burnett v. Holliday Brothers, Inc.*, 279 S. C. 222, 305 S. E. (2d) 238 (1983). The appellants and their predecessors in title failed to exercise the right within a reasonable time. Although the right accrued in 1946, no suit was brought to enforce it until 1981. The failure to act was negligent. The appellants obtained the interest in 1971 but waited ten years to bring an action. An heir testified that her lawyer informed her of the repurchase right in the 1940's, but neither she nor her siblings ever asserted it. However meritorious the appellants' claim would have been if timely made, the claim is barred by the lapse of time and the supervening circumstances. *Hemingway v. Mention*, 228 S. C. 211, 89 S. E. (2d) 369 (1955).

The appellants' action is also barred by the related doctrine of stale demand because it was first asserted after "an unexplained delay of such great length . . . as to create a . . . presumption that it has been abandoned or satisfied." *Presbyterian Church of James Island v. Pendarvis*, 227 S. C. 50, 86 S. E. (2d) 740 (1955).

The common law presumption of grant bars the appellants' claim. The doctrine is based on the principle that, after a passage of time, anything necessary to quiet title is presumed done, even if the truth is otherwise, so that possession of land for a long period of time perfects title. *Riddlehoover v. Kinard*, 1 Hill Eq. 376 (1833). Under this doctrine, the court must presume that the Authority gave notice to the heirs of Charles Mouzon and that the heirs released any right Mouzon held to repurchase the property.

The appellants rely on the alleged adverse possession of the tract by the heirs. We disagree. Although some of the heirs farmed the tract after it was condemned, they believed that the PSA owned the land. The heirs also paid the PSA rent pursuant to a lease agreement. The possession by the heirs was not hostile, continuous, or without recognition of the true owner's title. *Gregg v. Moore*, 226 S. C. 366, 85 S. E. (2d) 279 (1954).

The judgment below is, accordingly,

Affirmed.

LITTLEJOHN, C. J., and GREGORY and CHANDLER, JJ., concur.

HARWELL, J., not participating.