515 A.2d 1342

**Kathryn A. KINDLE, R.N., Appellee,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF NURSE EXAMINERS, Bureau of Professional and Occupational Affairs, Department of State, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1985.
Decided Oct. 6, 1986.

Jerome P. Grossi, Harrisburg, Joyce M. McKeever, Pittsburgh, for Bureau of Prof. & Occupational Affairs.

David F. Phifer, Harrisburg, for Dept. of State.

Jon C. Botula, Frank W. Ittel, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, MC DERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION *

ZAPPALA, Justice.

This is an appeal by the Commonwealth of Pennsylvania, State Board of Nurse Examiners (Board) from the Commonwealth Court order reversing the Board's order suspending the nursing license of Appellee Kathryn A. Kindle. The Board's order provided for termination of the suspension after one year upon submission of a psychiatric report by a board certified psychiatrist indicating Kindle was drug-free. The Commonwealth Court reversed, 86 Pa.Cmwlth. 468, 485 A.2d 534 (1984), holding that the four year delay from the time of Kindle's misconduct to the suspension of her license

* This Opinion was reassigned to this author on March 13, 1986.

was excessive and prejudicial per se. The Board's petition for allowance of appeal was granted to address the propriety of a per se rule of prejudice arising out of an administrative agency's delay in initiating disciplinary action. We now reverse the order of the Commonwealth Court.

In 1979, the Appellee was employed as a nurse by the Doctor's Osteopathic Hospital in Erie, Pennsylvania. During that year she misappropriated the controlled substances of Demerol and Dilaudid for her own use. On July 16, 1979, she was arrested and charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act (Act), 35 P.S. §§ 780-113 *et seq.*, and with violations of the Pennsylvania Crimes Code. She entered a plea of nolo contendere to four counts of violating the Act and six counts of violating the Crimes Code on January 28, 1980. On March 19, 1980, she was sentenced to a fifteen year probation and directed to pay a fine and the costs of prosecution and to make restitution to the hospital.[1] Kindle returned to nursing in September, 1981 in a part-time position as a registered nurse in an Erie nursing home.

Based on these underlying offenses, the Board issued a citation and notice of hearing to Kindle on January 19, 1983, charging her with a violation of section 14 of the Professional Nurse Law Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. § 224(4). Section 14 provides that the Board may suspend or revoke any license if the licensee has committed fraud or deceit in nursing practice.[2] An answer was filed by Kindle admitting the charges and raising in defense her successful probation and drug therapy treatment, as well as her new employment.

**1.** Kindle received an early discharge from probation on February 3, 1983.

**2.** The Board also charged that Kindle's use of the controlled substances had provided probable cause to require her to submit to mental or physical examinations to demonstrate that she could practice nursing with reasonable skill or safety pursuant to 63 P.S. § 224(2). On appeal to the Commonwealth Court, Kindle challenged the Board's finding of probable cause under that section. Because the Board's decision was reversed on other grounds, the Commonwealth Court did not address that issue.

After a hearing held on March 15, 1983, the Board concluded that Kindle had violated the Professional Nurse Law Act, acknowledging the mitigating circumstances which she had raised. The Board thereupon entered the order suspending her license.

On appeal to the Commonwealth Court, Kindle argued that the Board had abused its discretion in suspending her license more than four years after her misconduct. In accepting that argument, the court cited its previous opinions in *Ullo v. Com., State Board of Nurse Examiners*, 41 Pa.Cmwlth. 204, 398 A.2d 764 (1979) and *Conlon v. Com., State Board of Nurse Examiners*, 68 Pa.Cmwlth. 349, 449 A.2d 108 (1982) in which administrative delays in proceeding with the disciplinary actions were expressly disapproved. As it had done in *Ullo*, the court urged the Legislature to establish a statutory time limitation within which professional boards would be required to hold hearings and issue adjudications. The Commonwealth Court reversed the order of the Board.

 Of the several issues raised by the Board, its contention that the doctrine of laches should not bar the imposition of disciplinary action by a state licensing board as a matter of law is facilely resolved. In the recent decision of *Weinberg v. Com., State Board of Examiners*, 509 Pa. 143, 501 A.2d 239 (1985), we held that the equitable doctrine of estoppel by laches may be invoked in disciplinary proceedings for professional misconduct.[3] The defense of laches was raised originally by Kindle in her appeal to the Commonwealth Court, rather than in her answer to the Board's citation. The Board argues that the issue was waived by her failure to raise the issue during the administrative proceeding. We hold now that the defense of laches must be raised at the administrative level and that failure to do so will constitute a waiver. Because the holding in *Weinberg* was this Court's first definitive pronouncement on the availability of laches as a defense in an administra-

---

3. The opinion in *Weinberg* was handed down subsequent to the briefing of the issues on the instant matter.

tive disciplinary proceeding, however, we will permit Kindle to pursue this defense on remand of the matter to the Board.

 We must agree, however, with the Board's final contention that the Commonwealth Court erred when it adopted a per se rule of prejudice based solely upon the length of time between the misconduct and the license suspension. The length of delay between the misconduct and the administrative proceeding is an important consideration in determining whether an individual has been prejudiced by the delay. Thus, on remand of this matter the Board must take into account the four-year delay which occurred in determining whether the Board had failed to exercise due diligence and whether Kindle had been prejudiced thereby.

In *Weinberg*, we noted that the parameters of the doctrine of laches are well defined, acknowledging *Class of Two Hundred Administrative Faculty Members v. Scanlon*, 502 Pa. 275, 279, 466 A.2d 103 (1983) [Citations omitted] in which we stated:

> The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice.

The Commonwealth Court's holding understandably was engendered by frustration and a genuine concern for the extensive delays in administrative adjudications of the actions. Nevertheless, the practical effect of its holding was to create a statute of limitations, an effort properly left to the Legislature.

Accordingly, the order of the Commonwealth Court is reversed. The matter is remanded to the Board solely for a determination of the applicability of laches consistent with this opinion. Because the Commonwealth Court did not address the remaining issues raised by Kindle, the remand is without prejudice to Kindle's right to raise those issues

again on any appeal which may follow the Board's resolution of the issue of laches.

PAPADAKOS, J., files a concurring opinion.

HUTCHINSON, J., files a dissenting opinion in which NIX, C.J., and FLAHERTY, J., join.

PAPADAKOS, Justice, concurring.

I believe that the majority is mistaken in concluding that Commonwealth Court misapplied the doctrine of laches when it adopted a "prejudicial per se" rule in this case.

Appellee, Kathryn A. Kindle, was arrested on July 16, 1979; pled guilty on January 28, 1980; and was sentenced on March 19, 1980, for the drug-related offenses set forth in the majority opinion. She was successfully discharged from a drug rehabilitation program on June 30, 1980, and resumed her nursing career on September 8, 1981, at a nursing home in Erie, Pennsylvania, while she was still on probation as a result of her criminal sentence. Her work was apparently rated highly. Her probation was terminated on February 3, 1983.

While Appellant, the State Board of Nurse Examiners, began investigating the matter sometime in 1980, it did not begin formal proceedings against Appellee until January 19, 1983, well after her rehabilitation was completed and fifteen days before her probation was terminated. Appellant held a hearing on March 15, 1983, and issued its Order suspending Appellee's nursing license more than seven months later on October 28, 1983; well over four years from her arrest, and exactly three years and nine months from the date her guilty plea was entered. Commonwealth Court concluded that it could not condone such an excessive delay, and that the delay of four years that occurred was so excessive that it was prejudicial *per se* in the instant matter.

This is not the first time that Commonwealth Court has been required to deal with a claim of excessive delay against the State Board of Nurse Examiners. In *Ullo v. State Board of Nurse Examiners*, 41 Pa.Commonwealth

Ct. 204, 398 A.2d 764 (1979), the nurse in question had her license suspended (for one year) after a two-year delay by the Board in instituting proceedings. Commonwealth Court noted that it, in no way, condoned such administrative delays, but, nevertheless, required a showing that some harm or prejudice was caused by the delay.

In *Conlon v. State Board of Nurse Examiners,* 68 Pa.Commonwealth Ct. 349, 449 A.2d 108 (1982), there was a two-year delay between the hearing and license suspension. While it again required a showing that some harm or prejudice was caused by the delay, Commonwealth Court was more emphatic in expressing its concern about the delay involved. Commonwealth Court stated:

> We feel constrained, however, to note that the Board's seemingly dilatory conduct in adjudicating this matter could not be countenanced under other circumstances. There was a two-year delay here in resolving a case in which the nurse in question had admitted and had stipulated to having committed the offense with which she had been charged and nothing save the penalty remained to be decided. It would seem to us that the Board clearly has a duty to act reasonably when it gives or "takes away" licenses, and that this responsibility includes a prompt adjudication of all actions brought before it which impact upon a nurse's ability to sustain herself financially through the practice of her profession. Moreover, this is but the most recent of a number of cases which have come before this Court in which professional boards have been guilty of apparently inordinate delay in adjudicating actions brought before them.

68 Pa.Commonwealth Ct. 349, at 352, 449 A.2d 108, at 110.

The decision by Commonwealth Court in the instant case must be interpreted, at least in part, as a response mandated by that Court's justified concern with the fact that the Appellant Board continues to ignore, blatently, that Court's explicit instructions with respect to excessive delay. Indeed, the delay involved in this case directly flouts prior

Commonwealth Court decisions because it entails virtually twice the delay which occurred in the earlier cases. Given the special relationship that must exist between Commonwealth Court and the agencies of this Commonwealth, Commonwealth Court's application of the doctrine of laches in this situation was not unwarranted.

Historically, laches was a defense recognized by the English equity courts. Its interpretation in those courts was not uniform; at times a showing of prejudice to the defendants was required; at other times, the chancellor applied it if a plaintiff (or petitioner) had unreasonably delayed the assertion of his claim whether or not the defendant had been prejudiced. *Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d 474 (5th Cir., 1980). Today, of course, laches is usually defined as consisting of two essential elements: inexcusable delay in instituting a suit or proceeding, and prejudice resulting to the opposing party from such delay. *Class of Two Hundred Administrative Faculty Members of State Colleges in Com., by Reeser v. Scanlon,* 502 Pa. 275, 466 A.2d 103 (1983). *See also, Kehoe v. Gilroy,* 320 Pa.Superior Ct. 206, 467 A.2d 1 (1983). Whether laches exists in a given situation and whether the essential elements are present, has often been thought to be a factual question. *Siegel v. Engstrom,* 427 Pa. 381, 235 A.2d 365 (1967). Nevertheless, while the facts constituting undue prejudice to the defendant must usually be expressly demonstrated, special situations do exist where such a showing is either presumed, or need not be made at all.

Where an analogous statute of limitations exists, and has been exceeded, it has frequently been held that the applicability of the doctrine of laches is presumed. See, *Silver v. Korr,* 392 Pa. 26, 139 A.2d 552 (1958); *Philadelphia v. Louis Laboratories, Inc.,* 201 Pa.Superior Ct. 16, 189 A.2d 891 (1963). The presumption may be rebuttable. See, *Equal Employment Opportunity Commission v. Great Atlantic and Pacific Tea Co.,* 735 F.2d 69 (3rd Cir., 1984).

Where the defense has been raised in an admiralty case and there is no relevant analogous statute of limitations, it has been stated that "prejudice is presumed from unreasonable delay, and if the delay is sufficiently long, prejudice may be conclusively presumed." *Wnuczwnski v. Argonaut Navigation Co.*, 130 F.Supp. 439, 440 (D.Md., 1955). See also, *Cities Service Oil Co. v. Puerto Rico Lighterage Co.*, 305 F.2d 170 (1st Cir., 1962); *Intercontinental Transportation Co. v. The Tug Switcher No. 2*, 221 F.Supp. 748 (D.S.D.Texas, 1963); 91 A.L.R.2d 1417.

This Court has held that a court may deny relief if laches appears in the evidence or on the face of the bill or pleadings. *Grange National Bank v. First National Bank of Bradford*, 330 Pa. 1, 4, 198 A. 321, 323 (1938); *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 221 A.2d 123 (1966). Moreover, the defense has been held to be capable of being raised by preliminary objection. *First National Bank of Pittston v. Lytle Coal Co.*, 332 Pa. 394, 3 A.2d 350 (1939); *Silver v. Korr*, 392 Pa. 26, 139 A.2d 552 (1958). In other words, we have clearly recognized that inordinate delay, along with the presumed prejudice it causes, will sometimes be readily apparent as a matter of law without the need to resort to a full factual hearing.

On a number of occasions, this Court has taken the position that while laches cannot be established by the mere passage of time; inexcusable delay, *Grange National Bank v. First National Bank of Bradford*, 330 Pa. 1, 198 A. 321 (1938), or lack of due diligence *First National Bank of Pittston v. Lytle Coal Co.*, 332 Pa. 394, 3 A.2d 350 (1939); *Haas v. Llewellyn*, 390 Pa. 469, 135 A.2d 754 (1957); *Mulholland v. Pittsburgh National Bank*, 405 Pa. 268, 174 A.2d 861 (1961), by the plaintiff are sufficient to make out the defense; and prejudice to the defendant, although inherent in the situation, is implicitly presumed or taken for granted. Where the delay becomes grossly unreasonable, the necessity for specifics regarding prejudice or injury becomes less crucial. *Gabster v. Mesaros*, 422 Pa. 116, 220

A.2d 639 (1966). We have also indicated in a real estate case that a mere waiver by the plaintiff would also be sufficient to make out the defense of laches. See, *Lavan v. Menaker,* 280 Pa. 591, 124 A. 743 (1924). See also, *Pehlert v. Neff,* 152 Pa.Superior Ct. 84, 31 A.2d 446 (1943).

The Supreme Court of South Carolina, in a real estate case, recently applied the doctrine of laches, in addition to their own doctrine of staleness, to bar a claim of unexplained delay and great length against the State Public Service Authority, without any reference to prejudice to the defendant or requirement of proof to that effect. *Gray v. South Carolina Public Service Authority,* 284 S.C. 397, 325 S.E.2d 547 (1985).

While it may well be proper to insist that in most cases laches be applied only where there has been unexcused delay and expressly demonstrated prejudice to the defendant, and to treat these as the two critical elements of the doctrine, it should be permissible to stress the unreasonable delay element, and presume prejudice to the defendant at least in special situations.

There is nothing inherently novel about the instant Commonwealth Court decision with its absence of specific findings of prejudice to Appellee; nor is it novel that the four-year delay was found to be excessive and prejudicial *per se,* for this is merely a rebuttable presumption of prejudice determined from the evidence and from the face of the record. Commonwealth Court should generally be permitted to draw that inference or establish that presumption. It has special and important reasons to do so.

The special circumstances that justify this *per se* presumption of prejudice are not hard to discern. Commonwealth Court performs a unique and important function in our system in that it has direct responsibility for supervising most administrative agencies and boards in the Commonwealth. See, 42 Pa.C.S. §§ 761–764. Maintaining a proper relationship between that Court and the agencies or

boards is, therefore, crucial. Commonwealth Court should not be hamstrung in its efforts to carry out legitimate supervisory functions when it acts within reasonable parameters. One need not subscribe to certain elaborate theories [1] to recognize that it is often essential for courts to confine agency discretion through the adoption of explicit guidelines, or by requiring that agencies themselves adopt rules or adhere to fair and regular procedures. That is what Commonwealth Court attempted to do here. When its prior messages were ignored, Commonwealth Court felt compelled to send a message to the effect that where there was an unexcused delay of the length that occurred here, prejudice would be presumed *per se,* and laches would be applicable on the face of the record. We should ordinarily permit them to so rule. *Commonwealth Court has not established its own statute of limitations* because a delay of less than what occurred here may or may not constitute laches, and a greater delay may still be permitted where a valid excuse is presented or appears in the record, or where the presumption of prejudice is rebutted. In other words, Commonwealth Court did not establish a laches *per se* rule, which might well be the equivalent of a statute of limitations. All that Commonwealth Court did was to determine that under the facts of this case, the lengthy delay here would be presumed to have established the fact of prejudice to Appellee, *per se.*

By binding the hands of Commonwealth Court, we tend to encourage agency procrastination and, likewise, make it essential for attorneys representing litigants before Commonwealth boards and agencies to appeal every case where excessive delay may have occurred, and the specific board or agency has rejected the claim that it has been tardy. The issues of delay and prejudice will then have to be decided on a case by case basis with virtually no judicial guidance or guidelines available without intervention from

---

1. See, e.g., Kenneth Culp Davis, "Discretionary Justice, A Preliminary Inquiry" (University of Illinois Press, 1976).

this Court. This does not lead to a system of sound and efficient judicial administration.

The suggestion to the effect that there are no legitimate and pressing contemporary concerns about the proper calculus of responsibility existing between Commonwealth Court and this Commonwealth's boards and agencies (and not merely the Board of Nursing Examiners); and that such concerns must give way to doctrinal purity regarding the historical application of the doctrine of laches makes little sense. Historically, of course, Commonwealth Court's *per se* rule, which it adopted here, is not unusual or unprecedented. Even if it were, however, we should not second guess Commonwealth Court, which was specifically created to supervise Commonwealth boards and agencies solely for the purpose of leaving undisturbed some abstract and unsubstantiated notion about what constitutes a "judicial function."

I do, however, agree that we should remand this matter to the Nursing Board. As the majority indicates, the question of laches should have been raised initially before the Board, and a remand directly to the Board will give it full and fair opportunity to present evidence and make a record with respect to the questions of whether the delay here was excusable, and whether in fact Appellee was prejudiced. In other words, the Board should have been given the chance to present evidence on the record to rebut the presumption later established by Commonwealth Court.

While we have determined that laches is a defense that can and must be raised before an administrative board or agency, it must be kept in mind that the doctrine of laches is a judicial doctrine to be primarily applied and interpreted by the Courts. The fact that a board or agency rules on the question must not be interpreted to mean that Commonwealth Court must hereafter defer to agency discretion with respect to whether laches applies or not. To require such deference would, in my judgment, cause a serious

imbalance in the relationship between Commonwealth boards and agencies and Commonwealth Court. To the extent that laches involves an exercise of discretion, it is judicial discretion, in the final instance, that is being exercised.

Subject to the qualifications set forth above, I concur in the majority opinion.

HUTCHINSON, Justice, dissenting.

The majority correctly concludes that if the doctrine of laches is not raised at the administrative level it is waived. It recognizes that even if it might sometimes be fruitless to argue to an administrative body that its actions were barred by delay, we should not allow the parties to avoid the general principle that all issues must be raised at the earliest possible time to avoid waiver. Inexplicably, it then artifically avoids the consequences of that conclusion.

Applied to the facts before us, the majority's reasoning should result in a holding that the laches issue has been waived. Therefore, I cannot agree with the majority's mandate. In *Weinberg v. State Board of Examiners*, 509 Pa. 239, 501 A.2d 143 (1985), we stated that allowing a party to plead laches in an administrative proceeding was part of a "consistent body of case law in Commonwealth Court." 509 Pa. at 151, 501 A.2d at 244. Nevertheless, the majority permits this appellee to claim surprise. I fail to grasp that reasoning. In the face of a "consistent body of case law in Commonwealth Court," appellee was charged with notice that the laches issue could be raised below. So charged, she failed to raise it. That failure would have resulted in a waiver under any ordinary application of the term. I would remand the case to Commonwealth Court only for disposition of the remaining issues in the case.

NIX, C.J., and FLAHERTY, J., join in this dissenting opinion.