645 A.2d 348

**James C. LAJEVIC, D.M.D., Petitioner,**

v.

**DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided June 23, 1994.

312

Andrew W. Forsyth, III, for petitioner.

Judith Pachter Schulder, for respondent.

Before KELLEY and NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

James C. LaJevic, D.M.D. appeals from the February 7, 1994 adjudication and order of the State Board of Dentistry (Board) which suspended his license to practice dentistry in the Commonwealth for two years; one year of active suspension and the second year served on probation. The Board also assessed a $1000 civil penalty. We affirm.

On appeal, Dr. LaJevic has briefed five issues: 1) whether the Board had jurisdiction under the Dental Law of 1933, Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. § 123.1(d) (Law) to render its adjudication; 2) whether the failure of the Board to commence formal proceedings against him promptly "constitute[s] the basis for estoppel by laches to bar the suspension of Dr. LaJevic's dental license" (LaJevic brief at 25); 3) whether a temporary suspension order, previously withdrawn by the Board, barred the Board from going ahead with the

instant action; 4) whether alleged misrepresentations by Board counsel violated Dr. LaJevic's right to procedural due process; and 5) whether the penalty imposed was unduly harsh.

## BACKGROUND

The following facts are not in dispute. On July 19, 1989, the Board issued a temporary suspension order which found that Dr. LaJevic's continued practice of dentistry in the Commonwealth was an immediate and clear danger to the public health or safety. Pursuant to 63 P.S. § 123.1(d) (hereinafter Section 123.1(d)), a preliminary hearing was held at which the Commonwealth presented its case in support of a continuation of the temporary suspension. The Commonwealth evidence included, among other things, evidence that Dr. LaJevic's license to practice had lapsed and that he had failed to renew it. On August 16, 1989, the Board vacated its order of July 19, 1989 and restored Dr. LaJevic's license upon condition that Dr. LaJevic renew his lapsed license to practice.

On April 23, 1991, Commissioner George L. Shevlin of the Bureau of Professional and Occupational Affairs, on behalf of the State Board of Dentistry, filed an Order to Show Cause against Dr. LaJevic containing 47 separate counts of alleged violations of the Law. Those allegations included failure to renew a license, practicing in an unregistered branch office, using Valium for his own personal use, failing to keep controlled substances without making a notation on a patient's chart, and engaging in unprofessional and grossly negligent conduct with his employees and patients. Dr. LaJevic filed a timely answer and amended answer denying the allegations.

On March 25 and 26, 1992, formal hearings were held at which the Commonwealth presented evidence and Dr. LaJevic testified on his own behalf. Following the close of the record, the parties filed post-hearing briefs. In his brief, Dr. LaJevic raised for the first time an affirmative defense of laches.

On February 3, 1994, the Board issued its adjudication and order, based on 40 findings of fact. The Board concluded that

the evidence was sufficient to sustain 12 of the 47 allegations in the Order to Show Cause. The Board dismissed the remaining charges and suspended Dr. LaJevic's license to practice dentistry for two years; one year of active suspension and one year on probation. The Board also imposed a civil penalty of $1000.

## BOARD'S FINDINGS

Because the Board's unchallenged findings of fact relate to Dr. LaJevic's argument that the penalty imposed was too severe, we will quote a portion of them at length. (The subheadings are ours).

### [Administration of Halcion to Patients:]

9. Halcion is a brand name Schedule IV controlled substance used in the course of dental procedures as a central nervous system depressant which is intended to produce a state of conscious sedation in a patient in which the patient is able to respond to verbal commands and maintain an airway independently.

10. When oral ingestion is chosen as the route of administration of Halcion for a dental procedure the dentist should be aware that he or she must provide adequate protection to the patient after ingestion and until the drug has reached its peak effect.

11. On August 17, 1987 and September 12, 1987, Halcion was available in three dosage units of .125 mg., .25 mg. and .5 mg.; only the .5 mg tablet was white.

12. Ten to 15 minutes after ingestion of 1 mg. of Halcion, a dentist may expect the onset of conscious sedation which may be expected to continue for three to four hours.

13. A patient who has been administered Halcion should be monitored for a period of three to four hours after ingestion of the drug by a health care professional to insure against loss of consciousness and upper airway obstruction.

14. A dentist should discharge a patient administered Halcion only after the drug has reached its peak effect, which the treating dentist should determine by observation

of vital signs, including blood pressure; after the drug has reached its peak effect a patient may be discharged in the care of a responsible adult to whom the dentist has provided information that the patient may experience lack of coordination and sensory perception, and be susceptible to stumbles or falls for a period of up to 24 hours.

### [Ms. Weiss]

15. On August 11, 1987, Ms. Weiss was evaluated by [Dr. LaJevic] for dental implants; Ms. Weiss presented with a diabetic condition which she disclosed to [Dr. LaJevic] on a medical history form.

16. On August 17, 1987, Ms. Weiss presented at [Dr. LaJevic's] office for the placement of implants at a scheduled appointment. Ms. Weiss was not aware that she should be accompanied by a friend or relative to take her home and therefore arrived at [Dr. LaJevic's] office alone.

17. [Dr. LaJevic] pre-medicated Ms. Weiss with an unknown quantity of Halcion on August 17, 1987.

18. Ms. Weiss lost consciousness in the dental chair; she awoke on the living room couch in her home later that day.

19. [Dr. LaJevic] drove Ms. Weiss to her home on the above date; [Dr. LaJevic] described her at that time as in a sedated condition, very sleepy, groggy, conscious, but with limited mobility.

20. Ms. Weiss woke up, in her living room alone.

21. [Dr. LaJevic's] dental records of Ms. Weiss do not indicate the administration of any drug on August 17, 1987.

22. [Dr. LaJevic] did not discuss with Ms. Weiss the effect of her diabetic condition upon the expected course of healing of her implants.

23. On March 17, 1988, Ms. Weiss received a second set of implants. At this time [Dr. LaJevic] observed that Ms. Weiss' diabetic condition appeared not in control.

24. [Dr. LaJevic's] dental records contained no entries by him concerning Ms. Weiss' diabetic condition.

25. [Dr. LaJevic] did not consult with Ms. Weiss' physician regarding her diabetic condition before or during the implant procedures in August 1987 and March 1988.

## [Ms. Lowe]

26. During 1986–1987, [Dr. LaJevic] provided dental implant treatment to Cassy Lowe.

27. Ms. Lowe was evaluated on September 24, 1986; the course of treatment included six implants and fixed dental appliances for which [Dr. LaJevic] proposed to charge $6,000.

28. After the work was completed, Ms. Lowe experienced infection at the site of her lower denture and developed an infection at the site of the lower implants; to correct the problem [Dr. LaJevic] agreed to the insertion of new implants.

29. On September 12, 1987, Ms. Lowe was scheduled for placement of the implants at [Dr. LaJevic's] office at 8:00 A.M.; Ms. Lowe presented at the office with her husband, David Lowe.

30. Prior to the September 12, 1987 office visit, [Dr. LaJevic] had advised the Lowes that payment at the time of the procedure was required.

31. In the waiting room, Ms. Lowe was given two white Halcion tablets at [Dr. LaJevic's] direction.

32. [Dr. LaJevic's] records indicate that Ms. Lowe was administered two .05 mg. tablets of Halcion.

33. While Ms. Lowe was taken to the treatment room, David Lowe was approached by a member of [Dr. LaJevic's] office staff who requested payment of $2,000 for the procedure. Mr. Lowe refused to pay.

34. [Dr. LaJevic] refused to perform the procedure without the payment and discharged Ms. Lowe at approximately 8:30 A.M. into the care of her husband.

35. [Dr. LaJevic] did not provide David Lowe with instructions as to his wife's care at the time of discharge.

36. Ms. Lowe treated at Southside Hospital for the after-effects of Halcion ingestion; the treatment consisted of monitoring Ms. Lowe's vital signs and the administration of a narcotic antagonist; Ms. Lowe was admitted at 9:05 A.M. and discharged approximately four hours later; upon admission she was found to be unresponsive to verbal commands and painful stimuli; Ms. Lowes' vital signs exhibited evidence of continued effects of a central nervous system depressant such as Halcion from 9:05 A.M. to 12:20 P.M., with the drug appearing to reach its peak effect at approximately 10:00 A.M.

37. As of the date of the preliminary hearing, [Dr. LaJevic] was unaware of the clinical pharmacology, adverse reactions, possible side effects and proper reaction to the effects of Halcion.

### [Self–Administration of Hydrodiuril]

38. Hydrodiuril is a brand name diuretic and hypertensive drug available by prescription.

39. [Dr. LaJevic] self-prescribed and self-administered Hydrodiuril for a period of 12 years.

Board's Findings of Fact, Nos. 9–39.

### BOARD'S CONCLUSIONS

Based on the above findings of fact, the Board concluded that Dr. LaJevic failed to conform to acceptable and prevailing standards of dental practice: by leaving Ms. Weiss unattended in a heavily sedated condition in her home; by failing to consult with Ms. Weiss' physician before providing her with dental implants; by failing to discuss with Ms. Weiss the effects of diabetes in connection with the dental implants; and by discharging Ms. Lowe to take care of her husband in a heavily sedated condition with no instructions as to her monitoring or treatment. The Board further concluded that Dr. LaJevic failed to comply with 49 Pa.Code § 33.45(a)(3) by failing to document the dosage of the controlled substance Halcion administered to Ms. Weiss and Ms. Lowe.

Further, the Board concluded that Dr. LaJevic failed to conform to the prevailing and accepted standards of dental practice by administering the controlled substance Halcion to patients without acquiring and possessing knowledge as to the adverse reactions, overdose levels and contraindications in treatment of adverse results. The Board also concluded that Dr. LaJevic engaged in unprofessional conduct by self-prescribing the prescription drug Hydrodiuril. Finally, the Board concluded that Dr. LaJevic committed gross negligence by his acts of leaving Ms. Weiss unattended in her home in a heavily sedated condition and by discharging Ms. Lowe to the care of her husband in a heavily sedated condition.

On March 8, 1994, Dr. LaJevic filed a petition for review, a motion for expedited consideration and an application for stay pending review to allow him to continue practicing dentistry during these proceedings in this Court. President Judge Craig granted Dr. LaJevic's motion for an expedited hearing. However, in a memorandum opinion and order dated March 9, 1994,[1] President Judge Craig denied the application for stay pending review, concluding that Dr. LaJevic had not demonstrated a strong likelihood of prevailing upon appeal.

## DISCUSSION

■ Our scope of review of a license revocation is limited to determining whether constitutional rights were violated and whether the decision is in accordance with law and supported by substantial evidence. *Cassella v. State Board of Medicine, Bureau of Professional and Occupational Affairs,* 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988), *petition for allowance of appeal denied,* 522 Pa. 585, 559 A.2d 528 (1989).

### A. *Jurisdiction*

■ In his appeal before this Court, Dr. LaJevic does not contest the Board's findings of fact or conclusions of law. He does argue that, because formal charges were not filed against him until April 23, 1991 (20 months after the Board removed

1. (R.R. 200–05a.)

his temporary suspension and restored his license in August, 1989), the Board committed an error of law in determining that jurisdiction was proper.

Dr. LaJevic bases his argument of lack of jurisdiction on the italicized language of the temporary suspension provision of the Law and on the July 19, 1989 order of the Board which authorized the temporary suspension.[2] Dr. LaJevic argues that, pursuant to Section 123.1(d) of the Law, the Board was required to commence formal action to suspend his license "promptly and without delay." He also relies on the Board's own July 19, 1989 temporary suspension order which stated "[t]he Commonwealth shall immediately commence formal action to suspend, revoke or restrict the license of [Dr. LaJevic]...." (R.R. at 2a.)

We disagree with Dr. LaJevic's interpretation of those statements and agree with the Board's interpretation:

The Board does not view the language of Section [123.1(d)] requiring the prompt institution of formal action against a license which has been temporarily suspended as

2. Section 123.1(d) of the Law states as follows:

The board shall temporarily suspend a license under circumstances as determined by the board to be an immediate and clear danger to the public health or safety. The board shall issue an order to that effect without a hearing, but upon due notice, to the licensee concerned at his last known address, which shall include a written statement of all allegations against the licensee. The provisions of subsection (c) [relating to the rights of hearing, notice and appeal] shall not apply to temporary suspension. *The board shall thereupon commence formal action to suspend, revoke or restrict the license of the person concerned as otherwise provided for in this act. All actions shall be taken promptly and without delay.* Within thirty days following the issuance of an order temporarily suspending a license, the board shall conduct, or cause to be conducted, a preliminary hearing to determine that there is a prima facie case supporting the suspension. The licensee whose license has been temporarily suspended may be present at the preliminary hearing and may be represented by counsel, cross-examine witnesses, inspect physical evidence, call witnesses, offer evidence and testimony and make a record of the proceedings. If it is determined that there is not a prima facie case, the suspended license shall be immediately restored. *The temporary suspension shall remain in effect until vacated by the board, but in no event longer than one hundred eighty days.*
63 P.S. § 123.1(d). (Emphasis added).

jurisdictional in nature.... Moreover, the Board construes that provision requiring that formal charges be instituted promptly as intending to provide a procedural safeguard to a dentist who, in fact, has been deprived of his license to practice as a dentist on a temporary basis pending the disposition of the formal charges. Here, [Dr. LaJevic's] license was restored.

(R.R. at 132–33a.)

Section 123.1(d)'s requirement that formal action be taken promptly is intended to protect the due process rights of a licensee whose license has been suspended through the temporary suspension procedure and whose suspension is continued after the preliminary hearing. If the Board were allowed to delay filing formal charges while the license remained suspended, the licensee would be deprived of his ability to make a living in his chosen profession and his right to a full hearing as required by due process. However, if the license is *restored* to the licensee, then delay in filing the formal charges does not violate due process because the licensee is not deprived of his ability to make a living in his chosen profession.

Here, Dr. LaJevic was able to practice dentistry for those 20 months after his license was restored. It was only after a full hearing at which Dr. LaJevic was represented by counsel and allowed to present evidence and witnesses that his license was again suspended.

Dr. LaJevic's interpretation of the language used by the Board in its July 19, 1989 temporary suspension order is likewise erroneous. The order tracks the language of Section 123.1(d). The Board's order that the Commonwealth prosecutors commence formal action against Dr. LaJevic immediately was meant, in our judgment, to protect Dr. LaJevic's due process rights should the suspension of his license be continued. However, once the Board restored his license less than one month later, Dr. LaJevic did not need his due process rights protected. He was not being deprived of any rights. He was free to practice dentistry until the Board's adjudica-

tion and order suspended his license after a full hearing in 1994.

Dr. LaJevic's reliance upon *Shah v. State Board of Medicine,* 139 Pa.Commonwealth Ct. 94, 589 A.2d 783, *petition for allowance of appeal denied,* 528 Pa. 646, 600 A.2d 197 (1991) is misplaced. In *Shah,* the Board, following a preliminary hearing, had ordered the temporary suspension of Shah's medical license. Thereafter, this court denied a petition requesting supersedeas of the suspension, but our supreme court set aside the suspension, pending a final determination of the formal charges. The Commonwealth then promptly filed formal charges against the licensee within two months after the Board's temporary suspension. Although we reversed Dr. Shah's formal suspension, that case does not stand for the proposition that formal action must be taken by the Board within any specific time period following a temporary suspension. In *Shah,* we set aside his suspension on the basis of laches, an issue which (unlike here) had been properly preserved in proceedings before the Board. There we found that there had been an unreasonable and prejudicial 4½ year delay in bringing the charges to the attention of the Board and that several key witnesses could no longer be located. However, nothing in *Shah* dictates that formal charges *must* be filed against a licensee within a particular statutory time period.

■ Finally, we note, as President Judge Craig did, in his prior opinion denying Dr. LaJevic's request for a supersedeas,[3] that subsequent action following the vacation of a temporary suspension order, is governed by 63 P.S. § 124 relating to suspensions in the regular course, rather than by 63 P.S. § 123.1(d). Section 123.1(d) relates to procedures for a preliminary hearing to determine that there is a prima facie case supporting a *temporary* suspension. That section is inapplicable here where the temporary suspension has been vacated.

## B. *Laches*

■ Dr. LaJevic further argues that, because the Commonwealth waited 20 months to file formal charges against

3. Opinion at 351.

him, the Board is barred by laches from suspending his license. It must be noted, however, that the mere passage of time does not give rise to an automatic finding of laches. *Pennsylvania State Board of Medical Education and Licensure v. Schireson*, 360 Pa. 129, 61 A.2d 343 (1948).

The Supreme Court has established a two-part test for determining whether the defense of laches has been preserved: (1) whether the "complaining party is guilty of want of due diligence in failing to institute the action;" and (2) whether the other party has been prejudiced as a result of the delay. *Weinberg v. State Board of Examiners*, 509 Pa. 143, 148, 501 A.2d 239, 242 (1985).

We conclude that the record reflects no want of due diligence or prejudicial delay. Because of the complex nature of the charges and the evidence reviewed, a delay from August 1989 to April 1991 was not undue or unusual under the circumstances.

■ As noted earlier, Dr. LaJevic continued to practice dentistry and earn a living for the 20 months in question. He contends, however, that he suffered prejudice as a result of this delay. He asserts that in a separate case, where he had been suspended following a conviction of tax evasion, he withdrew his appeal, because he believed that no other Board charges would be filed. Dr. LaJevic claims he could have forced the merging of all the actions against him so as to expedite the resolution of his case. However, he raises this argument for the first time in his brief to this Court. He did not raise it in his answer or his amended answer and he did not testify on this claim of prejudice at his formal hearing.

The Supreme Court has held that "the defense of laches must be raised at the administrative level and that failure to do so will constitute a waiver." *Kindle v. State Board of Nurse Examiners*, 512 Pa. 44, 48, 515 A.2d 1342, 1344 (1986). Dr. LaJevic claims to have raised the defense at the administrative level, however, he does not cite in the record where the issue was preserved. *See* Pa.R.A.P. 2117(c) and 2118.

As neither Dr. LaJevic nor the Commonwealth presented evidence on this issue before the Board, we cannot hold that the affirmative defense of laches was properly raised and preserved. Therefore, it is deemed waived.

## C. *Finality*

■ Dr. LaJevic further argues that he was, in effect, tried twice under the same charges, once in the temporary suspension proceedings and again in the present action. However, Dr. LaJevic's case was not final after the temporary suspension proceeding. The only issue decided there was whether the Commonwealth made a prima facie showing of sufficient immediate harm to the public by reason of the Doctor's "failure to comply with biennial [license] renewal procedures" so that the temporary suspension of Dr. LaJevic's license should be continued. (Board's July 19, 1989 order, R.R. 1a.) That proceeding did not conclude with a final adjudication on the merits of any of the substantive charges against Dr. LaJevic. Dr. LaJevic was not "retried" by the Board for the same charges. After the Board found that the prosecutors had failed to present a prima facie case of a clear and present danger to the public and vacated the temporary suspension (R.R. 43a), he was tried for the first time on the substantive issues in the instant action. The Board's first sanction, which was imposed solely for failure to apply for license renewal, did not bar the later proceedings to suspend for the substantive reasons described in the detailed findings of fact set forth above.

## D. *Severity of the penalty imposed*

■ Dr. LaJevic complains that the two-year suspension the Board imposed upon him is unduly harsh. Our review of the Board's action "is not whether its order was reasonable, but whether it was made 'in accordance with law' (i.e., whether it was made in bad faith, and whether it was fraudulent or capricious)." *Slawek v. Board of Medical Education and Licensure*, 526 Pa. 316, 322, 586 A.2d 362, 365 (1991) (Emphasis deleted) (footnote omitted).

In dismissing all but 12 of the 47 charges against Dr. LaJevic, the Board took into consideration Dr. LaJevic's personal problems and his 20 years as a dentist. However, the Board could not ignore the gross negligence committed by Dr. LaJevic in his care of the two patients and his unprofessional personal use of prescription drugs. After a review of the record, we hold that the Board did not act capriciously, fraudulently or in bad faith in suspending Dr. LaJevic's license for two years; one year active suspension and one year on probation.

## E. *Bias*

Throughout his brief, and also in oral argument to this Court, Dr. LaJevic's counsel accuses the Chief Counsel of the Bureau of Professional and Occupational Affairs of a personal bias against him. We have reviewed these allegations and find them completely unfounded and unsupported by the record. He argues that Chief Counsel misrepresented the law and misinterpreted the language of a Board order to the Board members; but Dr. LaJevic's counsel's citation in his brief to pages 131a and 132a of the reproduced record to support that charge refers only to a footnote in the opinion of the Board and does not refer us to any alleged representations made by the Chief Counsel or any place in the record where the representations might be found. Dr. LaJevic offers no other evidence of bias and we conclude that no such bias existed.

■ In any event, Dr. LaJevic waived this issue because he did not raise it in his petition for review in his general statement of objections to the Board's order; nor do we find that an objection to counsel misconduct is "fairly comprised therein." *See* Pa.R.A.P. 1513(a) and *McGrath v. State Board of Dentistry*, 159 Pa.Commonwealth Ct. 159, 632 A.2d 1027 (1993).

For the reasons stated above, we affirm the order of the Board.

326

### *ORDER*

AND NOW, this 23rd day of June, 1994, the order of the State Board of Dentistry, dated February 7, 1994 at Docket No. 0187–46–91 is hereby affirmed.